PEOPLE ex rel. STATEN ISLAND RAPID-TRANSIT R. CO. v. ROBERTS, State Comptroller.

(Supreme Court, Appellate Division, Third Department. April 14, 1896.)

1. TAXATION—CORPORATIONS—REASONABLE VALUATION OF STOCK.

Where there had been no sales of stock of a corporation, capitalized at $500,000, during the year, a valuation thereof at $50,000 for taxation, under Laws 1880, c. 542, as amended, was a reasonable one, where the property of the corporation was subject to two mortgages and valid income bonds, which had priority over the stock, to the amount of $4,500,000, and no dividends had ever been declared on bonds or stock, and, though there was a surplus of $57,000 after paying operating expenses and interest on the mortgages, it had to be used to pay interest on a floating debt, so that no funds for dividends remained.

2. SAME—PRESENT VALUE TO BE TAKEN.

In making a valuation of stock of a corporation for taxation, under Laws 1880, c. 542, as amended, the present, and not the prospective, value of the stock must be taken.

Certiorari on relation of the Staten Island Rapid-Transit Railroad Company against James A. Roberts, state comptroller, to review his assessment of taxes against relator. Modified.

Argued before PARKER, P. J., and LANDON, PUTNAM, and MERWIN, JJ.

Tracy, Boardman & Platt, for relator.

T. E. Hancock, Atty. Gen., and G. D. B. Hasbrouck, for defendant.

MERWIN, J. The relator is a domestic corporation, operating and managing a railroad and certain ferries connected therewith. It was organized in 1880, and commenced business in 1884. It was within the classes of corporations taxable under the provisions of chapter 542 of the Laws of 1880, and the acts amendatory thereof. In November, 1894, in pursuance of the provisions of section 1 of the act, it made a report to the comptroller, stating, among other things, that the amount of its capital stock was $500,000, in shares of $100 each, all of which had been paid in; that no dividends had been declared; that the highest and lowest price of sales of stock during the year was $10 per share. To this report, there was attached, in pursuance also of the requirements of the act, a verified

estimate and appraisal, made by the treasurer and secretary of the company, of the actual value in cash of the stock, at the sum of $50,000. The comptroller was not satisfied with this valuation, and thereupon made a valuation at the sum of $100 a share, and fixed the amount of the tax on that basis, under the provisions of section 3 of the act. In the return of the comptroller it is not stated upon what facts the comptroller based his valuation of the stock at par value. Thereafter the relator made application for revision and readjustment, under the provisions of section 19 of the act, as amended by chapter 463 of the Laws of 1889. A hearing was had, and evidence was taken, but the comptroller declined to change the valuation. Thereupon the relator, under the authority of section 20 of the act as amended, obtained the writ of certiorari, which, with the return thereto, is now before us.

By section 20, above referred to, it is provided that the action of the comptroller upon any application for a revision and resettlement may be reviewed, both upon the law and the facts, and that:

"For that purpose the comptroller shall return to such certiorari the accounts and all the evidence submitted to him on such application, and, if the original or resettled accounts shall be found erroneous or illegal by that court either in point of law or of fact the said accounts shall be there corrected and restated by the said supreme court."

This seems to contemplate that the whole case upon which the comptroller acted shall appear by the return, so that the court may determine whether in any respect the action of the comptroller was erroneous or illegal, and, if so, may itself make the proper determination. The question, then, here, is whether, upon the case presented by the return, the action of the comptroller, in fixing the valuation of the stock of the relator at its par value, is in any respect erroneous or illegal.

It seems to be settled that the determination of the comptroller on the question of valuation must stand unless clearly shown to have been erroneous. People v. Campbell, 145 N. Y. 591, 40 N. E. 239. It is apparent, from the evidence, that there were no sales of stock or market value upon which a valuation could be properly made. The intrinsic value was, therefore, to be considered. There were two mortgages upon the property of the company, and, subject to those, there had been issued income bonds to the amount of $4,500,000, which were a lien prior to the stock. Substantially all of the stock of the company, as well as its bonds, had been used in constructing its road, which included a tunnel and a drawbridge. No dividend had ever been declared on the stock, and no interest had ever been paid or dividend declared on the income bonds, for the reason, as the secretary of the company testified, that the earnings of the company had never been such as to warrant it. It was shown that, for the last fiscal year of the company, prior to November, 1894, the net earnings, after the payment of the interest on the first and second mortgages, rentals, and taxes, was about the sum of $57,000. This was applied in reduction of an accumulation of interest on a floating debt that had existed for some years.

On the part of the defendant it is argued that, prospectively, the franchise of the company is valuable, and that during the year ending November 1, 1894, it had reduced its indebtedness over $50,000 or 10 per cent. of its capitalization, and that these facts furnished a good basis for the valuation of the comptroller. Under the statute the present value of the stock, not the prospective, is to be determined. The reduction of the indebtedness of the company was only by the application of the surplus of $57,000 in the manner above stated. In arriving at this surplus, no account was made of, or provision made for, any dividend, or interest on the income bonds, which had priority to the stock. The fact of this priority was a very material element in ascertaining the value of the stock, and, having this in view, it is very difficult to see how the stock could be valued at par, or at any higher rate than the value placed on it by the company in its report. From the evidence in the case, we have not, I think, any right to assume that the income bonds are not a genuine liability of the company. If that be so, it is quite apparent that the capacity of the company to declare dividends on the stock is very limited.

In People v. Home Ins. Co., 92 N. Y. 328, 344, it was said concerning the tax levied on corporations under the act referred to:

"The amount of the tax is dependent upon their business prosperity, as evidenced by their capacity to declare dividends, instead of upon the value of the corporate property."

The same view seems to have been accepted in People ex rel. American Contracting & Dredging Co. v. Wemple, 129 N. Y. 564, 29 N. E. 812. The tax, when imposed on a domestic corporation, is a tax upon its corporate franchises. People ex rel. Pennsylvania R. Co. v. Wemple, 138 N. Y. 1, 33 N. E. 720. As the present case stands, it seems to me to be very clear that the valuation of the stock at its par value is erroneous. If that be so, we are then, under the statute, called upon to fix the proper amount. The evidence does not, I think, warrant a larger amount than that stated by the company in its report.

Determination of the comptroller modified, by reducing the valuation to the sum of $50,000, and reducing the tax accordingly, with $50 costs and disbursements to the relator. All concur.