The court below dismissed the writ of certiorari granted to review the assessment of the relator's real estate in the town of York for the year 1894. The property assessed was about seven and one-fourth miles of the main line of the relator's railroad running from Binghamton to Buffalo, consisting of a double track, with about three miles of side track, with three stations, water tanks, and one hundred and twelve acres of land. The property was assessed at $300,000.
A reference was ordered at the Special Term to take evidence in regard to the value of the property and the correctness of the assessment. The Special Term confirmed the action of the assessors, and the order was affirmed by the Appellate Division.
The only question involved in this appeal is, whether the assessors adopted a legal method or rule for ascertaining the value of the property assessed. It is claimed that they adopted an illegal and erroneous principle of valuation, and the assessment made is the result of such rule, and should, therefore, be set aside. It must be borne in mind that all the assessors had to deal with is the real estate already described. They had nothing to do with the personal property, which is assessed at the place where the principal office of the corporation is. (Laws 1857, ch. 456, § 3.) They have nothing to do with the value of the franchises of a corporation since they are now taxed under another law. (Laws 1881, ch. 361, § 3.)
The method of arriving at the value of the real estate of the relator for the purpose of taxation, which was adopted by the assessors, is thus stated by them in their return to the writ of certiorari: "In fixing upon the sum at which the real property was assessed we considered the same not as a separate piece of real estate standing alone, but as a part of the extensive and valuable system of railroads leased and occupied by said relator, extending from the city of Binghamton to the city of Buffalo, and as a part of the extensive and valuable system of *Page 493 
railroads operated by the relator, and based our said assessment thereof upon the cost, rentals and earnings of said railroad as shown by the annual report of said relator to the board of railroad commissioners of the state of New York." The valuation was based upon the "cost, rentals and earnings of said railroad." The relator gave proof, which is uncontradicted, with respect to the cost of reproducing these seven and one-fourth miles of railroad with the tracks, roadbed, tanks and buildings, and their total cost is materially less than the sum at which the assessors fixed the value. It is difficult to formulate from the adjudged cases any general rule or principle applicable in all cases to the valuation of the real estate of a railroad for the purpose of taxation Cases may be found in the Federal courts containing strong expressions of opinion in favor of the rule adopted by the assessors. But these were cases involving the validity of state laws providing for the assessment of all the property of railroads within the state, real, personal and mixed, including franchises, and the statute pointed out in terms the mode of assessment, which in some respects included the methods adopted in this case. (Pittsburgh, etc., Railway Co. v. Backus,154 U.S. 421; Western Union Telegraph Co. v. Taggart,163 U.S. 1.)
Where the assessors have jurisdiction over all the property of the corporation within the state, whether it be real estate, capital stock or franchises, they may deal with every element of value that constitutes property of the corporation or enters into its earning or producing capacity. But in most cases in this state the assessors have jurisdiction only over a part of the corporate property, that is, the real estate. The cost of a railroad twenty-five years ago must be largely increased at the present time by betterments and repairs, and the sum which represents such cost and repairs may not indicate the present value of the property. The earnings of a railroad include the earnings of the personal property as well as the real estate. It includes the use of its franchises, and the profits of operation may, in many cases, be attributed to the skill or ability of the management. The rentals grow out of all real *Page 494 
and personal estate and franchises. It is simply impossible to apportion the rentals or earnings and credit the just proportion to real estate, to personal property and to franchises. To ascertain the rental per mile, and then capitalize that sum at six per cent in order to ascertain the value per mile, as seems to have been done in this case, would include the use of real and personal property and corporate franchises, and such a rule for the assessment of real estate alone is misleading and wholly unreliable.
The cost of reproducing these seven miles of railroad seems to us to be the just and reasonable rule of valuation. There is no reason that we can perceive for assessing this property at a greater sum than the cost of replacement. It may not in every case be worth what it would cost to reproduce it. That would depend upon the income or earning capacity of the road after it is built. But this is the case of a paying railroad, and, when valued at what it would cost to procure the land, construct the roadbed, put down the ties and rails and erect the buildings and other structures, all new, it is difficult to see any ground for assessing it at a larger sum. The intricate theory of valuation upon which the assessors proceeded included so many elements foreign to the value of the real estate that it cannot be approved. The assessors are not bound by the estimate of the cost of reproduction given by the railroad or its agents. They may inquire into that question themselves and in their own way, but they have no right to disregard uncontradicted proof. It may in any case be competent to consider all the elements of value that they have considered in this case, but in the end, when they come to make their decision as to value, for the purpose of taxation, it may properly be much less, but can never exceed the actual cost of producing the property in the condition in which it is found by the assessors at the time of making the assessment. Such a rule of valuation is reasonable and possible. But to ascertain the value of a few miles of railroad in a country town upon a complex theory based upon the income or rentals of two hundred miles in this state of an intricate railroad system extending into other states, *Page 495 
is impracticable, and, if permitted, would, in many cases, result in injustice. An assessment based upon the cost of reproduction eliminates from the question all extraneous elements, and at the same time subjects railroad property to its just share of the public burdens. (People ex rel. Manhattan Railway Co. v.Barker, 146 N.Y. 313; People ex rel. Panama Railroad Co. v.Comrs. of Taxes, 104 N.Y. 240.)
An assessment of the portion of the real estate of a railroad which is within the town and subject to the jurisdiction of the assessors, upon the basis of the income or profits of the whole system of which it is a part, must necessarily include the use of franchises and personal property which are otherwise assessed, and hence such a principle of valuation must, in some measure at least, impose double taxation. It is doubtless within the power of the state to authorize such a method of assessment, but it has not attempted to exercise such a power. The real estate, the personal property and the business and franchises are taxable under different statutes, and these three elements into which the corporate property is divided should not be commingled when it is reasonably possible to avoid it. When there is no question before the assessors save the value of that part of the real estate of a railroad which is within the town, the cost of replacing it will ordinarily furnish a just measure of valuation. The principle of assessing a few miles of railroad in a town according to the relations which it is supposed to bear to the whole of a vast and intricate system, or to the income or earning power of the entire system, draws into the calculation so many elements that the process becomes too complex and difficult for even an expert. It is no disparagement of the capacity and intelligence of the average assessor to say that it would present to him a problem incapable of accurate solution and a rule of action in the performance of his official duty impossible in practice. The process virtually requires the assessors to assign to each mile of railroad its proportionate share of the income of the entire system and estimate the value of the real estate upon that basis. *Page 496 
That such a principle of valuation is misleading and impossible of application with any approach to justice or accuracy is sufficiently shown by what appears in this record. The learned referee, upon whose report the assessment was confirmed, resorted in his opinion to a calculation to show the annual rental of the whole road per mile and then capitalized that sum at six per cent, which produced a result much larger even than that found by the assessors. He then suggests that an allowance should be made for a portion of that rental since it was to be credited to the use of terminal and other property not embraced in the specific seven and one-fourth miles of railroad, and he then proceeds to reduce his figures to correspond with those of the assessors. This shows that the theory adopted, in order to work at all, had to be supplemented in the end by an arbitrary allowance for income that the particular property in question had no share in producing. It is supposed that certain cases in this court, of which the case of People ex rel. B. S.L.R.R. Co. v. Barker
(48 N.Y. 70) is a leading one, sanction this rule of valuation. We think not. Many of these decisions were made before the passage of the act of 1881 imposing taxes on the franchises and business of a corporation, and they doubtless contain some remarks in regard to the earnings and profits of the corporate business as the basis for the valuation of the real estate that would not be strictly accurate if made now. In so far as they hold that the real estate of a railroad in a town is not to be assessed as an isolated piece of land, but with reference to its position as part of a line of railroad with all its incidents, including the business and profits to be derived therefrom, they are doubtless correct. The property in question would be worth practically nothing except for its position as part of a railroad system. It has a value as part of the whole property and practically no value when detached or severed from it. But the question still remains what is the reasonable and practical method of estimating that value? Is it by an intricate calculation of the rentals, earnings or profits per mile capitalized, and then followed by arbitrary deductions *Page 497 
on account of the greater earning capacity of some parts of the property over other parts, or is it the cost of reproducing the same part of the railroad? The assessors have to deal with actual, visible, tangible property. A railroad may possess things intangible, as privileges or franchises of great value, and that are very important elements in its earning capacity, but the assessors have no power to include them in the valuation of real estate, and any method of valuation which includes them as a part of the real estate is erroneous.
The assessment of the real estate upon a basis of profits or income of the whole railroad must necessarily attribute to the real estate a value which should be shared with the personal property and franchises. This objection is obviated when the real estate is assessed as such, and at a valuation not to exceed the sum at which it could then be produced in its existing condition. Of course, the valuation will vary in each locality according to circumstances, as the cost will vary. In some localities the property may have increased in value from natural causes, and in others it may have depreciated, but these inequalities are practically eliminated when in each locality the real estate is valued according to the cost of reproduction. Where the real estate alone is to be valued without reference to the personal property or franchises, this method will secure the nearest approach to justice, and it can be applied with something like substantial accuracy.
When all the property and every element of value may be included in the assessment, as was contemplated by the statutes which were considered in the cases referred to in the Federal court, the assessment may require the application of a different principle.
The order of the Appellate Division and of the Special Term should be reversed, and the proceedings remanded to the assessors for further action.
All concur, except VANN, J., dissenting, and ANDREWS, Ch. J., taking no part.
Order reversed. *Page 498