---

(28 Misc. Rep. 468.)

## In re BRANDRETH'S ESTATE.

(Surrogate's Court, Westchester County. July, 1899.)

1. TRANSFER TAX—GIFT OF STOCKS IN CONTEMPLATION OF DEATH.

    A gift by a father to his daughters of shares of stock in a corporation, accompanied by the execution by the daughters of an irrevocable power of attorney to their father, authorizing him to vote the stock, and to receive the dividends thereon during his life, is a transfer in contemplation of the death of the donor, within the terms of the transfer tax law (Laws 1896, c. 908, § 220, subd. 3), and subject to the tax imposed by such act.

2. SAME—TRUST AGREEMENT.

    A trust agreement entered into between the father, daughters, and other stockholders subsequent to the gift by which the stock of the corporation was transferred to trustees, for the purpose of preventing its alienation, did not affect the conditions of the gift, or abrogate the power of attorney so far as it postponed the beneficial enjoyment of the gift by the donees until the father's death.

3. SAME—VALUATION OF STOCK OF CORPORATION.

    In valuing shares of stock in a corporation for the purpose of the transfer tax law, where the stock has no market value, its actual value may be ascertained by taking into consideration the property and earning capacity of the corporation; and, in connection with its good will, the value of

secret recipes owned by the corporation, from which it compounds medicines, the manufacture and sale of which constitutes its business, is proper to be considered.

Appeal from report of appraiser.

Appeal from decree assessing and fixing tax on the personal estate of George A. Brandreth, deceased.   Affirmed.

Francis Larkin, for appellants executors of George A. Brandreth and administrator of Mary W. Borup.

Joseph W. Middlebrook, for respondents state comptroller and county treasurer.

SILKMAN, S.   This is an appeal from a decree of this court assessing and fixing the transfer tax upon the personal estate of George A. Brandreth, deceased.   The main question presented upon the appeal is as to the liability to tax of a transfer of certain shares of stock in the Porous Plaster Company of Sing Sing, made by decedent prior to his death.   The material facts are that George A. Brandreth, in his lifetime, and on or about the 2d day of January, 1893, transferred to his four daughters 11 shares of stock of the Porous Plaster Company of Sing Sing, to wit, 3 to Mary Watson Borup, 3 to Fannie R. Kane, 3 to Helen Wood Potter, and 2 to Eliza B. Larkin.   The par value of this stock was $5,000 per share.   At the time of the transfer the daughters executed a power of attorney to their father, which was irrevocable by its terms, and in which it is recited that the transfer is made upon condition that the said George A. Brandreth "is to receive all dividends declared upon said stock for the term of his life, and also upon condition that he has the right to vote upon the stock, the same as though no transfer had been made."   The Porous Plaster Company were, by said power of attorney, directed to allow the said George A. Brandreth to vote upon the said 11 shares of stock the same as though no transfer had been made, and also authorized said company to pay the said George A. Brandreth all dividends which might be declared upon said stock, to make out the checks payable to his order, and to take his receipt for the same.   The power of attorney also contained this provision: "It being our intent and object to secure him the dividends on said stock until his death, and also the right to vote on said stock."   Subsequently, and on the 19th day of January, 1893, the said George A. Brandreth and his four daughters above named, together with Ralph Brandreth and Franklin Brandreth and others, entered into a trust agreement, wherein and whereby the stock of the Porous Plaster Company was transferred to George A. Brandreth, Franklin Brandreth, and Ralph Brandreth, as trustees, the conceded object of which agreement was to prevent the control of the said corporation, or any interest therein, going outside of the Brandreth family.   The stock of the company was transferred to the trustees, and the trustees issued certificates or receipts to the holders of the stock for the stock transferred to them, in which it was stated that it was to be held, used, managed, and controlled by the trustees pursuant to the trust agreement.   The 11 shares of stock were issued by the company upon the transfer of George A. Brandreth, and the several new certificates were indorsed by the four daughters, but the certificates themselves never passed out of the

possession of the corporation; that is to say, although the stock certificates were issued in the name of the persons named, and indorsed by them, the certificates were never detached from the stubs of the certificate book. George A. Brandreth, subsequent to the transfer to his daughters, and subsequent to the trust agreement, continued to receive the dividends upon the 11 shares of stock down to the time of his death. It is claimed on behalf of the appellants that there was an absolute transfer of the stock by Mr. Brandreth to his daughters on January 2, 1893, and that while this transfer was upon condition, and upon the agreement that George A. Brandreth should receive all the dividends during his life, and have the right to vote upon said stock, such condition and agreement was abrogated by the trust agreement under which the stock was deposited with the trustees, of whom George A. Brandreth was one. It is also claimed by appellants that the transfer was not made in contemplation of his death, but in contemplation of his approaching second marriage. I am unable to agree, however, with the inferences drawn by the appellants from the facts as proved. The transfer by George A. Brandreth to his daughters was a gift, and a gift upon certain conditions, which were that during his life he should receive the usufruct of the stock, and have the exclusive right to vote upon it. It was nothing more nor less than a gift of the remainder in the stock, or the property represented thereby, after the donor had had the life use thereof. It cannot be construed that the trust agreement which had for its primary purpose merely the retention of the control of the corporation within the family was intended to abrogate or destroy the terms and conditions of the gift. The trust agreement is between all those interested in the stock of the corporation, and is not an agreement specially between George A. Brandreth and his daughters. It does not, in express terms, change the nature of the contract or agreement between them, and there are no provisions in it from which such an intention could be gathered in case a controversy had arisen between George A. Brandreth and his daughters during his lifetime. The daughters could not, as against their father, during his lifetime, have been heard to assert that under the terms of the trust agreement they were entitled to the income upon the 11 shares of stock, or that the conditions of the gifts had been done away with. It will be noticed that the trust agreement was executed only a few days after the gift, so soon that it was improbable that the circumstances of the parties had so changed as to justify an inference that the donor had changed or released the conditions of the gift. And what would seem conclusive upon this point is the fact that George A. Brandreth was paid all the dividends upon the 11 shares of stock during his life, without apparent question, pursuant to the terms of the gift.

It is asserted by the appellants that Mr. Brandreth gave to his daughters during the period from the date of the trust agreement to the date of his death certain moneys, but it does not appear that these moneys were any part of the dividends upon the stock, and it must be inferred that they were merely the bounty which a generous father would bestow upon his children, irrespective of any contract relations. The conclusion is inevitable that the parties never

intended to change the original conditions of the gift, and that the 11 shares of stock transferred by Mr. Brandreth to his daughters were only to be enjoyed upon his death. The express condition of the transfer was that he was to have the use of the dividends during his life, but this expression is nothing more nor less than that the enjoyment by the donees was postponed until his death. His death was contemplated by the agreement. The enjoyment of the gift depended upon his death, and it would seem that the facts bring the transfer directly within the provision of the statute authorizing the tax, and the decisions of the courts. In re Green's Estate, 153 N. Y. 223, 47 N. E. 292. The appellants argue that the transfer was not made in contemplation of the death of the donor, but of his second marriage. There is nothing, however, in this suggestion. While the second marriage may have been the inciting cause which brought about the gift, and to avoid future trouble between the daughters and their stepmother, it was nevertheless made in contemplation of the death of the donor. This is obvious when we compare the language of the gift with the language of the transfer tax law (Laws 1896, c. 908, § 220, subd. 3), providing for the tax, which is, "When the transfer is of property made by a resident  *  *  *  by deed, grant, bargain, sale or gift, made in contemplation of death of the grantor, vendor, or donor, or intended to take effect in possession or enjoyment at or after such death." The appraiser was, therefore, right in holding that the transfers to Mrs. Borup, Mrs. Kane, Mrs. Larkin, and Mrs. Potter were taxable.

The only other question to be determined is as to whether the appraiser was justified in valuing the shares of stock at $20,000 each, in order to measure the value of the transfer for the purposes of taxation. The Porous Plaster Company was incorporated by a special act of the legislature, and in 1880 succeeded to the business which Benjamin Brandreth had established more than 60 years before. The stock of the company was owned and controlled by the Brandreth family. As appears by the evidence, there has been but one sale, and that by the sheriff of one share, and the life interest in another share, which took place in 1891 or 1892, and brought $28,000. It also appears that the company has been very profitable, and has paid from 48 to 60 per cent. in dividends on the par value of its stock for many years. It is at once apparent that it is practically impossible to produce expert evidence of the market value of this particular stock, and the only manner of arriving at its value is by taking into consideration the actual property of the corporation and its earning capacity. Ordinarily, it would be difficult for an appraiser to get at the actual property of a corporation to fix the value of its shares. In most cases it would be impracticable for an appraiser to attempt to make up a balance sheet of the assets and liabilities of a corporation in order to appraise its shares, and this method can only be resorted to, if practicable, when the stock has no market value which can be ascertained. It appears in evidence, and appellants contend, that, according to the actual tangible assets of the corporation, the shares of stock are worth only $10,000 each, or double their par value, and which excludes any value of the good will or earning capacity of the

corporation.    The business of the Porous Plaster Company is that of compounding or manufacturing pills and plasters under three secret recipes.    Appellants claim that these secret recipes do not belong to the corporation, and are of no value to it, and belong solely to the persons in whom the secret is reposed, although the great earning capacity of the company is due to these secret recipes.    These secret recipes were owned by Benjamin Brandreth in his lifetime, and from an examination of his will and the accounting of his executors it cannot be gainsaid that whatever ownership he had passed to the Porous Plaster Company.    While this species of property is not tangible, and is, to some extent, of uncertain and precarious value, dependent upon the good faith of those who possess the secret, still I apprehend that a large portion of their value lies not so much in the secret itself as upon the judicious advertising which these proprietary articles have had, and the names under which they are sold have become thereby a valuable trade-mark.    As I have said, property of this kind is, to some extent, precarious.    At the same time it has always been regarded as of value, and vested interests therein have always been protected by the courts, whether it be called secret knowledge, good will, or trade-mark rights.    The appraiser, therefore, properly considered these secret recipes of value in ascertaining the value of the corporate shares.    It goes without saying that property of this kind is not susceptible of a market value, and its value cannot be determined by ordinary expert testimony.    The appraiser has, therefore, arrived at a value based upon the earning capacity of the corporation.    He has fixed the value of the shares at $20,000 each, $10,000 of which is represented by the value of the secret remedies and good will of the business.    Upon such a value the corporation has always paid from 12 to 15 per cent. per annum, and I think that it is fair to assume that the stock of a corporation which has earned and paid during its entire existence—more than 17 years— from 48 to 60 per cent. upon the par value of its capital stock is fairly and reasonably worth, and the market value thereof is not less than, 400 per cent.    While the earning power of a corporation is not proof of the value of its property, nevertheless it is competent evidence of value, and is a feature to be considered in determining the valuation to be placed upon the stock for the purposes of taxation.    People v. Barker, 81 Hun, 22, 30 N. Y. Supp. 586; People v. Roberts, 4 App. Div. 334, 38 N. Y. Supp. 724; People v. Pond, 13 Abb. N. C. 6; People v. Hicks, 40 Hun, 598.    Where it is impossible for an appraiser to ascertain a market value of the stock of a corporation by reason of the fact that there is none, the state does not thereby lose the tax upon the transfer.    Under such circumstances the actual value will be presumed to be the market value until the contrary is shown.    I. am therefore of the opinion that the appraiser has committed no error, and that the decree assessing the tax against the transfer to Mary Watson Borup, Fannie R. Kane, Helen Wood Potter, and Eliza B. Larkin of the 11 shares of stock, valued at $20,000 per share, must be affirmed, with costs.

Decree affirmed, with costs.