THE PEOPLE OF THE STATE OF NEW YORK ex rel. THE NEW YORK CENTRAL RAILROAD COMPANY, Relator, *v.* NEWELL THOMPSON and Others, as Assessors of the Town of Ontario, Wayne County, New York, and Another, Respondents.

Supreme Court, Wayne County, March 4, 1935.

*Harris, Beach, Folger, Bacon & Keating*, for the relator.

*Charles S. Herrick* [*Johnson S. Albright* of counsel], for the respondent Thompson.

RODENBECK, Referee. The property of the New York Central Railroad Company in the town of Ontario, N. Y., has been over-assessed. The assessors were required to assess the property at full value and in arriving at the assessed value they were required to consider the earnings of the road. They cannot assess such property more than the cost of reproduction less depreciation, but if the road is not a paying property it cannot be assessed solely upon the basis of cost of reproduction less depreciation. (*People ex rel. D., L. & W. R. R. Co.* v. *Clapp*, 152 N. Y. 490.) The cost of reproduction less depreciation is the highest assessed valuation for local taxation that can be placed on railroad property that is a

paying investment. In this instance the assessment was fixed at $115,000, which is the equalized value of the property, so that the value as determined by the assessors was $185,485. This is the figure that the assessors arrived at as the value of the physical property of the New York Central in the town as of July 1, 1931, when the assessment in question was made. The property consists of right of way, rails, bridges, signals, telegraph and telephone equipment, buildings and miscellaneous property going to make up the railroad property of the company in the town at that time subject to local assessment. This property was used as a part of the so-called Ontario Division of the road, extending from Suspension Bridge to Oswego, being one of the divisions of the New York Central and leased lines. The latter is an extensive railroad system embracing twelve other roads, some of which since 1915 were leased while others were only operated by it. In 1930 and 1931 all of the roads shown on Exhibit 4, attached to the findings, were leased by the New York Central Railroad Company, but in making up a yearly comparative statement of income the roads operated by the New York Central Railroad Company as well as those leased should be considered, which is the method adopted by the Interstate Commerce Commission and State Public Service Commission.

The first question before the assessors in valuing the property of the road in this town was what would it cost to reproduce the property with a proper deduction for depreciation? This rule was recognized by the assessors and they had obtained, prior to the assessment, an estimate from an expert on the value of railroad properties of the value of this property less depreciation. This expert placed the reproduction value of the property at $221,590. with an equalized value of $137,386, so that the assessors had this estimate before them when they made the assessment. This same expert submitted an appraisal on the trial of the depreciated cost of reproduction of $238,325 which would give an equalized assessed value of $147,761. If the estimate submitted by this witness to the assessors equalized were taken as the basis for the assessment, the assessment would be $137,386, but the assessment made by the assessors was $115,000, so that the assessors made a deduction of $22,386, for some reason which can only be surmised as the assessors were not sworn. There is no evidence that they made an independent appraisal, except as it may be inferred from the variation of the estimate furnished by their expert and the assessment made by them. There is no direct evidence that they took the earnings of the road, the Ontario Division, and the part in the town of Ontario into account. It is to be presumed that the assessors knew the rule of assessment laid down by the statute and the courts, that if

the road in the town, the Ontario Division and the New York Central Railroad Company system were not a paying investment the assessment should be fixed accordingly. If such a course was not taken they proceeded upon a wrong principle, and, if it was followed, sufficient consideration was not given to the earning capacity of the New York Central and the portion in the town of Ontario and the division of which it constituted a part. If the cost of reproduction less depreciation was alone taken as the basis of assessment the weight of the evidence is clearly against the estimate adopted by the assessors. If the assessment of $115,000 represents the depreciated value equalized at sixty-two per cent the average of the estimates given by all of the witnesses equalized in the same way would be $117,741. This average is made up of equalized estimates which run from the lowest of relator's witnesses, $87,686, to the highest of the assessors' witnesses, $158,357, while the equalized value of the assessors is $115,000. All of the witnesses on value were more or less interested, some being interested on the side of the relator seeking to show an overvaluation of its property, and others being called on the side of the assessors who were seeking to sustain their assessment. The determination of the true cost of reproduction less depreciation involves a process of weighing the testimony of the various witnesses and if this course is followed the weight of the testimony indicates that the property has been overvalued on the basis of the cost of reproduction less depreciation. If the expert witnesses were disinterested it would seem that there should not be so great a variation in their testimony of values, which range as to the cost of reproduction from $202,240, the lowest estimate, to $310,809, the highest estimate, a difference of $108,569, which is but little less than the assessment itself. The depreciated value as testified to by the witnesses likewise varies from $141,430 to $255,416, a difference of $113,986, which is less than the assessment. There is one expert witness whose estimates seem to be more reliable than the others as a basis for fixing the value of the property. He does not appear to have been influenced by extraneous considerations and to be more disinterested than the other expert witnesses on value. This is the witness Kenny who had had a wide experience in appraising railroads and who was connected with the New York State Tax Department. He had previously made an appraisal of this property and his estimate of its value on July 1, 1931, was $161,023 including the value of the right of way which was conceded to be $4,594, which equalized would be an assessed value of $99,833. Attached to the findings is a table showing the estimates of the various witnesses on the cost of reproduction; another on the depreciated value, and a third on the equalized value.

But the making of estimates as to cost of reproduction less depreciation is not the whole problem of assessing railroad property. If the road is a paying one the assessors need go no further, but if the road is not a paying one they must take income into account in fixing this assessment. If the road is not a paying one it is not worth the cost of reproduction less depreciation for no reasonable investor would give that much for the road but would consider the income from the road in arriving at its value. This the assessors are required to do. They have the authority to get the information necessary to arrive at a reasonable assessment and are required to do so. The neglect to do so or their indifference to the proper performance of their duties will not excuse them. The rule of assessment of railroad property is not to be disregarded because it may be difficult of application. In *People ex rel. Rome, W. & O. R. R. Co.* v. *Hicks* (40 Hun, 598; affd., 105 N. Y. 198) a previous assessment on the property involved here, which then formed a part of the Rome, Watertown and Ogdensburg Railroad which now constitutes the Ontario Division of the New York Central Railroad Company, was under review, and in the opinion of the General Term Judge BRADLEY said: " The estimate of value of any portion of the road cannot be intelligently made without some knowledge or information of it as a whole, and its business, earnings and ordinary expenses. Railroads are constructed with a view mainly to revenue and profit upon investments. And hence the productive capacity and its earnings are matters for consideration in the estimate of their value. And the extent to which actual net earnings of a road should govern or aid such estimate is dependent upon circumstances. No arbitrary method can be prescribed of ascertaining value. In some cases the earnings of a road may be entitled to much more consideration than in others. The cost of the road is also usually to be taken into account, and the value depends much upon relations present, and in reasonable contemplation, because the value of property may considerably be dependent upon defined unappropriated means and facilities for increased business connections and relations and the importance of the consequences to follow.

" While these are in some degree speculative, they may upon the best judgment of men affect the value of property. A road with no present net earnings may have a substantial value beyond that of the land it occupies, and the timber and iron on its bed. The value of the portions of the road in the respective towns must necessarily be estimated as part of the whole of which they are essential parts. And the average net earnings of the entire line of a railroad for a number of consecutive years may properly be shown to aid the estimation of the value of the several portions of it. And when

the value of its main line is in question, the net earnings creditable to that alone can very properly be considered. As the accounts of those earnings may not and usually are not kept separate from those derived from other sources, the necessary deductions may be required to represent such result " (pp. 601, 602).

In affirming this case and in discussing the consideration of earning capacity, Judge FINCH said: " The whole process was tentative and for consideration in its bearing on the ultimate result, and not conclusive. It was an aid in determining value, and a very important one, but simply an assistance to the judgment, in connection with cost, location, feeders, and probable increase of business and the like, and no law dictates what calculations the court shall make to enlighten its own ultimate judgment " (p. 201).

There are many other cases relating to various situations where earnings were considered in fixing value and cost of reproduction less depreciation was held not to be the sole measure of value. (*McAnarney* v. *Newark Fire Ins. Co.*, 247 N. Y. 176; *Matter of Brandreth*, 28 Misc. 468; *People ex rel. Colgate Inn, Inc.*, v. *Assessors*, 132 id. 506; *People ex rel. Albany & G. B. Co.* v. *Weaver*, 34 Hun, 321; *People ex rel. Railroad Co.* v. *Keator*, 36 id. 592.) In *People ex rel. Powers* v. *Kalbfleisch* (25 App. Div. 432; appeal dismissed, 156 N. Y. 678), the case of an assessment of a commercial building in the city of Rochester, income as well as cost of reproduction less depreciation was considered, the court saying: " We are inclined to think that the net income of a building constructed for commercial purposes and as an investment is an important element in determining its assessable value " (p. 436). The case of *People ex rel. Ogdensburg & L. C. R. R. Co.* v. *Pond* (13 Abb. N. C. 1) involved the assessment of railroad property. It was sent to a referee to take the evidence and report back and his report was confirmed by the Special Term and that decision affirmed at General Term. It was held in that case that the assessors in estimating the value of railroad property within a town are not to be governed solely by its cost but rather, though not exclusively, by its productiveness for railroad purposes.

The proper protest against the assessment was made by the relator and it was then claimed by it that the assessment should be reduced to $63,000. The assessors disregarded the protest, however, and fixed the amount at $115,000 which is $22,386 less than the cost of reproduction less depreciation equalized submitted to them by the expert appraiser, Reeves. Just how or why they arrived at this reduced assessment does not appear. The assessors, as stated, were not sworn on the hearing. But it is clear from the evidence submitted on the income of the New York Central Rail-

road Company and leased lines, the Ontario Division and the part of the road in the town of Ontario, that the assessors did not give due weight, if any, to the fact that this road and the Ontario Division and the part in the town of Ontario were not a paying investment and that the cost of reproduction less depreciation, alone was not the measure of value to be followed. The business in the town of Ontario and on the Ontario Division and the New York Central system as a whole had been declining for a number of years. Perhaps this general downward trend should not be given undue weight, but the falling off in receipts in 1930 down to July 1, 1931, are pertinent and competent facts to be considered. The assessment was fixed as of July 1, 1931, and the inquiry relates to the financial operating conditions at that time and prior thereto for a reasonable time sufficient to form a judgment as to whether or not the property involved was a paying proposition at that time. If it was not a paying road then a suitable deduction should be made from the cost of reproduction less depreciation in fixing the value for purposes of assessment. This is the rule and the difficulty of observing it or the necessities of the tax district is no excuse for not following it. The law affords a remedy for overvaluation in making an assessment and when it is invoked the rules applicable to the making of assessments will be applied according to the merits of each case. The evidence shows that the loss from the operation of the road in the town of Ontario increased from $19,347 in 1930 to $21,242 in 1931, while the assessment was increased from $90,650 in 1930 to $115,000 in 1931. Other data with reference to the operation of the road in the town of Ontario support the conclusion of a declining business preceding the date of assessment. But if the division, of which the portion in the town of Ontario forms a part, is considered, the same downward trend in business and income is observable. There was a loss in operation of the Ontario Division for the first six months of 1931 of $351,101. The same decline of business and income is reflected in the New York Central Railroad Company and leased lines as a whole during the period involved in this assessment. The net income in 1930 of the New York Central Railroad Company and leased lines was $35,981,782, while in 1931 it was $2,430,101, and the net operating income in 1930 was $57,235,527 and in 1931 it was $28,075,579. These and many other data in relation to the business and income of the New York Central Railroad Company and leased lines convincingly show, what is a matter of common knowledge, that railroad properties have been undergoing an unfavorable change in their financial condition which must be taken into account by assessors in fixing the assessments upon such properties. If a decrease in valuation of other properties

has accompanied this change in railroad properties it is no excuse for an overvaluation where the question is properly raised. When the assessment on the property of the company in the town of Ontario was $90,650 in 1930 the amount of revenue left for fixed charges on the New York Central Railroad Company and leased lines was eleven and nine-tenths per cent, while in 1931, when the assessment had been raised to $115,000, it was only seven and four-tenths per cent. A reduction in the assessment would be expected in 1931 under such circumstances rather than an increase over that of 1930. The relator paid a dividend from 1921 to 1929 and set aside a certain amount for contingencies in the shape of a surplus, which is recognized as good business judgment and necessary to the proper conduct of an extensive railroad, and in 1930, the year before the assessment was made, it paid a dividend of eight per cent, but part of this dividend was paid out of surplus accumulated in prosperous years, and while the net income in 1930 was $35,981,791.87 it dropped to $2,430,101 in 1931 and the rate of return on relator's total investment dropped from two and sixty-three one-hundredths per cent in 1930 to one and twenty-nine one-hundredths per cent in 1931 and for the first six months in 1931, up to July 1, 1931, it dropped to sixty-four one-hundredths per cent.

But when we come to the question of the amount of the reduction to be made in the assessment a difficult problem is presented. Some reduction must be made, but how much? There is very little definite guide. One witness for the relator said that the property in question was worth only $24,435, another that it was worth nothing at all, while the two witnesses called by the assessors testified that it was worth more than their estimate of value based upon the cost of reproduction less depreciation, or more than $238,325 and $255,416 respectively, while the assessors' estimate of value based upon the assessment of $115,000 equalized was $185,485. The road is a going concern and some assessment must be borne by it. The problem here is the proper assessment of the road for purposes of taxation. It is the value for taxation that controls and not the value for some other purpose. The question is what is this property fairly worth for purposes of taxation? There may be no market value for this portion of the road or for the Ontario Division but they have a value for purposes of taxation. The market value of property has been defined as that value of property of the same kind which has been the subject of purchase or sale to so great an extent and in so many instances that the value has become fixed. (*Sloan* v. *Baird,* 162 N. Y. 327.) The property may have no commercial value because of lack of demand for such property, but it must be assessed for purposes of taxation. The

commercial value of a piece of property is its sale value regarded as a business proposition, but where property has no sale value, there being no demand for it, commercial value is not synonymous with full value for purposes of assessment. The Court of Appeals has defined full value in *People ex rel. D., L. & W. R. R. Co.* v. *Clapp* (*supra*), where a road is a paying one, as the cost of reproduction less depreciation, and this and other cases have indicated that full value in the case of a road which is not paying means a sum less than the cost of reproduction less depreciation, taking into consideration the business done by the road and its earning power. Just how these elements are to be considered and to what extent is a matter for the judgment of the assessors and when this judgment has been arrived at in a case like the present one it would not be the market value of the property and might not be its commercial value but it represents its full value for purposes of taxation. If full value were to be interpreted as the value between a willing seller and a willing buyer, the question of value would still come down to one of judgment, taking depreciated value and earnings of the road and future prospects into consideration. Taking all the evidence in the case into consideration the value must be fixed at less than the cost of reproduction less depreciation. The estimate of value that seems the most reliable is that of the witness Kenny who fixed the depreciated value at $161,023 which equalized at sixty-two per cent would make an assessment of $99,833. But this witness did not consider in fixing his value the financial situation of the New York Central Railroad Company, the Ontario Division and the part in the town of Ontario. His was merely an estimated cost of reproduction less depreciation as a basis for arriving at the value of the property. The relator is entitled to have the business and income of its road and parts thereof considered in fixing valuations and assessments. Those of its witnesses who had considered this element placed a value of nothing and $24,435, showing the effect of the financial situation of the road upon the value of its property. The estimates of these two witnesses were evidently based upon considerations of market or commercial value alone. The true assessment for taxation is a matter of judgment considering all the circumstances. The courts are loath to lay down any one rule for fixing assessments and have not said how far financial circumstances shall determine the amount of an assessment. Taking the estimate of the witness Kenny as to the cost of reproduction less depreciation and equalizing it at sixty-two per cent which would make the assessment $99,833 and giving due weight to the evidence bearing upon the financial condition of the New York Central Railroad Company, the Ontario Division and the

part in the town of Ontario, the full value of the property involved would be $120,968 which equalized at sixty-two per cent would make an assessed value of $75,000. The conclusion is that the assessors have overvalued the property by $64,517 and over assessed it by $40,000 and that the full value is $120,968 and the true assessment $75,000. This is a reduction of $24,833 from the cost of reproduction less depreciation equalized given by Kenny which represents the reduction to be allowed for the unprofitable operation of the road in the town and on the division and New York Central Railroad Company. The cost of reproduction less depreciation was overestimated by the assessors and their witnesses, which was one error in arriving at the assessed value, and no sufficient allowance, if any, for the unproductive character of the property was the second error. If Kenny's estimates are taken as the reliable ones on the cost of reproduction less depreciation and due consideration is given for the unprofitable operation of the road, division and New York Central Railroad Company, an assessment of $75,000 would seem to be equitable and just and in compliance with the rules laid down by the statutes and the courts. With a declining return on the property an increase in the assessment from 1930 to 1931 was not consistent. If $90,650 was a fair assessment in 1930, an assessment of $75,000 would seem to be a reasonable one in 1931, with the loss from operation in the town increasing from $19,347 in 1930 to $21,242 in 1931, with a loss on the division of $351,101 for the first six months of 1931, and with a falling off of net income on the New York Central and leased lines from $35,981,-782 in 1930 to $2,430,101 in 1931. If the assessors are required to take net income into account, the assessment of 1930 could not be maintained in the face of a falling income. If the assessment for 1930 of $90,650 was fair and reasonable, one of $75,000 in view of the declining income would seem to be a fair and reasonable assessment for 1931. The assessment of $75,000 represents the equalized value of the property at sixty-two per cent of its full value, taking every consideration into account, which the law requires. The assessment should, therefore, be reduced to the sum of $75,000.

Report of referee confirmed by Mr. Justice CLYDE W. KNAPP on July 24, 1935.