THE PEOPLE OF THE STATE OF NEW YORK ex rel. THE NEW YORK CENTRAL RAILROAD COMPANY, Relator, *v.* WARREN S. GRIFFIN and Others, as Assessors of the Town of Riga, Monroe County, New York, and FRED MCINTOSH, Clerk of Said Town, Respondents.

Supreme Court, Monroe County, June 27, 1939.

*Harris, Beach, Folger, Bacon & Keating* [*Paul Folger* of counsel], for the relator.

*Warren, Shuster, Case & Halsey* [*Hampton H. Halsey* of counsel], for the respondents.

LAPHAM, J. This is a motion to confirm the report of the referee in a certiorari proceeding brought by the relator to review the assessment made by the assessors of the town of Riga in July, 1935, on the real property of the relator in the town. The relator is the owner of a railroad which runs from New York city to Buffalo and a branch line known as the West Shore Railroad which extends from Weehawken, N. J., to Buffalo. Both of these lines pass through the town of Riga.

The referee has found that the relator is entitled to an order reducing its assessment from the sum of $912,000, fixed by the assessors, to the sum of $709,460. The petitioner contended that its property had been overvalued by the sum of $411,400. The referee has ascertained the overvaluation to be the sum of $203,240. The petitioner also contended that real property in the town of Riga was assessed generally at seventy per cent of its real value, while the assessors claimed that real property in the town was assessed at more than one hundred per cent of its full value. The referee has found that real property in the town of Riga on the 1935 tax rolls was assessed at ninety-five per cent of its true value.

After a careful consideration of the evidence adduced at the hearings before the referee, the briefs submitted on this motion, and the pertinent authorities, I have reached the conclusion that the report of the referee should be confirmed in all respects. In fixing the amount of the assessment, the assessors did not give sufficient consideration to the sharp decline in the loss of earnings of the New York Central Railroad, considered both as a unit within the town of Riga and as a component part of a system serving a wide territory, and to the transformation of the New York Central Railroad during a period of five years immediately preceding July, 1935, from a solvent business enterprise to one under a real threat of recurring annual deficits. (*People ex rel. Delaware, L. & W. R. R. Co.* v. *Clapp,* 152 N. Y. 490; *People ex rel. New York C. R. R. Co.* v. *Thompson,* 156 Misc. 536; *People ex rel. Lehigh V. R. Co.* v. *Harris,* 168 id. 685; affd., 257 App. Div. 912.)

Since the assessment of the relator's property has been reduced by an amount less than half the reduction urged upon the assessors by the relator, the question whether costs shall be awarded against the town rests in the discretion of the court. (Tax Law, § 294.) The circumstances of this case have convinced me that no costs should be assessed against the taxing district.

The relator contended that the assessors erred not only in failing to give sufficient consideration to the marked decline in the earnings

of the company, but also in placing a valuation on its property that was higher than the ratio of valuation applied to other taxable property in the town. The relator claimed specifically that other taxable property in the taxing district was assessed for seventy per cent of its real value and the assessors contended that such property was assessed for more than one hundred per cent of its real value. The greater part of the testimony on the hearings consisted of evidence which was introduced to establish the equalization rate in the town and only an infinitesimal part of the testimony, exclusive of exhibits, was devoted to proof of loss of earnings. Out of the total record of 2,058 pages, the relator needed only 71 pages to show its loss of income. The controversy over the equalization rate dominated the whole certiorari proceeding and on this major overshadowing issue the town has won an almost complete victory. The costs of this proceeding, which are attributable primarily to the all-pervasive question of the general rate of valuation for taxable property in the district, should not in reason and in justice be borne by the party who was victorious on this issue.

The assessors, moreover, acted in the utmost good faith in fixing the assessment on the relator's property. They assessed the property at a sum $142,307 less than the cost of reproduction of the property minus depreciation, and the land value, which the courts had prescribed as the proper method for the valuation of railroad property. The reasons for this reduction have not been vouchsafed to us. Some reduction, however, was voluntarily made, although it was not sufficient in view of the catastrophic decline in general economic values.

There was nothing arbitrary, fraudulent or intentionally discriminating in the conduct of the assessors. They were required to reach a decision on the value of the relator's property without the benefit of an authoritative expression of the Court of Appeals on the correct rule of valuation applicable to a railroad that was not making a return on its investment. The dictum in *People ex rel. Delaware, L. & W. R. R. Co.* v. *Clapp (supra)*, that a railroad might not under all conditions be worth what it would cost to reproduce it, less a certain amount for depreciation, had at the time of the assessment here been construed by several lower courts as a command to the assessors to take the earnings and income of the railroad into account in reaching an assessment, but the Court of Appeals had not been given an opportunity to pass on this issue directly and to formulate a rule to meet the exigencies of the economic depression. In the face of this uncertainty in the law, the omission of what we may consider an important and relevant element in fixing the assessed valuation of the relator's property does not assume the

significance it might otherwise have on a question of this kind where the guide posts established by the law are more clearly marked.

I do not regard the argument of relator, that it is entitled to costs because it failed to obtain one-half of the reduction claimed by only $2,400, as decisive. The discretion contemplated by the statute rests upon something more than a mathematical calculation.

The denial of costs to the relator does not prejudice in the slightest degree the right of the referee and the stenographer to compensation for the services rendered to the parties to this proceeding. The relator and the respondents are, of course, jointly liable for the fees of the referee and the stenographer. The law is well settled that, in the absence of contract or stipulation, the parties are jointly liable for the services performed by a referee selected by them and by a stenographer. (*Bottome* v. *Neeley*, 124 App. Div. 600, 603; *Finch* v. *Wells*, 66 Misc. 384.) The stipulation, which was agreed upon by the attorneys for the respective parties and which was entered in the minutes of this proceeding, provided that the referee's fee should be fixed at $100 a day and that the stenographer's fees should be added to the referee's fee as an expense. There is nothing in the stipulation which alters this general liability resting on both litigants.

The report of the referee is confirmed and his findings of fact and conclusions of law are adopted as the findings and conclusions of this court. No costs are awarded against the town of Riga.

Let order enter accordingly.