SAMUEL ELLIOTT, on Behalf of Himself and Others, Appellant, *v.* GUARDIAN TRUST COMPANY OF NEW YORK, Respondent.

**Appeal — judgment — when final judgment cannot be awarded by the Appellate Division.**

The Appellate Division may not award a final judgment unless the facts upon which it makes the determination are undisputed and cannot be varied upon another trial, or are established by official records, or have been specifically found by the jury or trial court.

*Elliott* v. *Guardian Trust Co.*, 145 App. Div. 166, modified.

(Argued December 18, 1911; decided January 23, 1912.)

APPEAL from a judgment entered July 1, 1911, upon an order of the Appellate Division of the Supreme Court in the first judicial department, reversing an interlocutory judgment in favor of plaintiff entered upon the report of a referee and directing a dismissal of the complaint.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Lewis E. Carr* and *Henry L. Sprague* for appellant. The decision of the Appellate Division reversed the interlocutory judgment and dismissed the proceedings upon an assumption of facts which never existed and which were not found by the referee. That court had no authority to direct final judgment for the defendant. (*Rhinelander* v. *F. L. & T. Co.*, 172 N. Y. 519; *Guernsey* v. *Miller*, 80 N. Y. 181; *Benedict* v. *Arnoux*, 154 N. Y. 715; *Matter of Chapman*, 162 N. Y. 456; *Van Buren* v. *Wotherspoon*, 164 N. Y. 368; *Dixon* v. *James*, 181 N. Y. 129; *Duclos* v. *Kelley*, 197 N. Y. 76.) Under the subscription agreement plaintiff is entitled to an accounting. (*Booth* v. *C. M. Co.*, 74 N. Y. 15; *Mansfield* v. *N. Y. C. & H. R. R. R. Co.*, 102 N. Y. 205; *Metcalf* v.

*Union Trust Co.*, 181 N. Y. 39; *Brearley School, Ltd.*, v. *Ward*, 201 N. Y. 358; *Pierce* v. *Prescott*, 128 Mass. 140.) Under the provisions of the mortgage executed February 27, 1907, the plaintiff is entitled to an accounting. (*Rhinelander* v. *F. L. & T. Co.*, 172 N. Y. 519; *Frishmuth* v. *F. L. & T. Co.*, 107 Fed. Rep. 169; *Clark* v. *Callahan*, 105 Md. 600; *Fletcher* v. *Fletcher*, 4 Hare, 74; *R. L. Works* v. *Kelly*, 88 N. Y. 234.) Even under the substituted mortgage executed June 4 and 6, 1907, the plaintiff is entitled to an accounting. (Lewin on Trusts, 963; *Cox* v. *Stokes*, 156 N. Y. 491; *U. W. W. Co.* v. *Omaha Water Co.*, 164 N. Y. 41; *Diefendorf* v. *Spraker*, 10 N. Y. 246; *Petre* v. *Espinasse*, 2 Myl. & K. 496; *Williams* v. *Haskins*, 66 Vt. 398; *Meiggs* v. *Meiggs*, 15 Hun, 453; *Mabie* v. *Bailie*, 95 N. Y. 206; *Gulick* v. *Gulick*, 39 N. J. Eq. 401; *Taylor* v. *Draper*, 71 N. J. Eq. 309; *Hollister* v. *Stewart*, 111 N. Y. 644.)

*Henry D. Hotchkiss* for respondent. As to the subscription moneys, the plaintiff is not entitled to the benefit of either of the two mortgage instruments, or any recital therein. (*Belden* v. *Burke*, 147 N. Y. 542.) The court below was right in reversing and dismissing the complaint. (Code Civ. Pro. § 1187; *Outhwater* v. *Moore*, 124 N. Y. 66; *Duclos* v. *Kelley*, 197 N. Y. 76.)

COLLIN, J.  The plaintiff, in behalf of himself and all others having a like interest, demands a judgment that the defendant account for the moneys paid it under written subscriptions for the bonds of the La Dicha & Pacific Railroad Company, a corporation. The issues in the action were heard and determined by a referee, who, upon findings of fact and a conclusion of law, directed the interlocutory judgment that the defendant account for its management and disposition of the moneys. The Appellate Division unanimously adjudged that such judgment be reversed and the complaint dismissed.

The dismissal of the complaint by the Appellate Division was unwarranted on the facts found by the referee. That court may not award a final judgment unless the facts upon which it makes the determination are undisputed and cannot be varied upon another trial, or are established by official records, or have been specifically found by the jury or trial court. A statement of the reasons and authorities sustaining this rule is made in recent decisions and need not be repeated. (*Dixon* v. *James*, 181 N. Y. 129; *Duclos* v. *Kelley*, 197 N. Y. 76; *Putnam* v. *Lincoln Safe Deposit Co.*, 191 N. Y. 166.)

The following facts were found: About July, 1906, the La Dicha & Pacific Railroad Company entered upon the undertaking to procure subscriptions for its bonds to be issued. A printed form for the subscriptions was prepared, which recited that the railroad company offered for subscription $1,000,000 of an authorized issue of $1,500,000 bonds of stated tenor and terms, to be a first mortgage lien on a railroad approximately eighty miles long, to be constructed between stated termini in Mexico, and other facts immaterial in our consideration, and set forth a proposed subscription of the effect: The undersigned thereby subscribed for bonds of the par value named, at a stated price to be paid in six installments at designated times, the last of which should be paid one hundred and fifty days after the first became payable; all of the payments to be "paid to the La Dicha & Pacific Railroad Company at the office of the trust company which shall be named as trustee under the mortgage securing said bonds" and which shall deliver a receipt for each payment when made; the bonds to be delivered to the subscriber at the date of the last payment; the railroad company reserved the rights of refusing any subscription and of canceling unless the full amount of $1,000,000 of bonds was subscribed. All of the subscriptions were of the one form. On September 14, 1906, or thereabouts, the defendant corporation

became the trust company to be named as trustee under the mortgage to be issued to secure the bonds subscribed for, and then received the existing subscriptions and thereafter the subscriptions as made, and opened with and in the name and subject to the orders of the railroad company an account which was credited with the sums paid under the subscriptions and other sums deposited by the railroad company. On November 14, 1906, the plaintiff signed a subscription whereby he, under the acceptance thereof by the railroad company, subscribed for $10,000 par value of said bonds at the named price, the last installment of which he paid April 29, 1907. Between September 14, 1906, and October 14, 1907, subscriptions in the sum of $470,958.50 were paid by the subscribers to the defendant and in the sum of $26,902.40 to the railroad company and by it paid to the defendant. The aggregate of the subscriptions received by the defendant was, therefore, $497,860.90, which sum it paid to or on the order on for the account of the railroad company between October 22, 1906, and October 22, 1907. On or about February 27, 1907, an instrument in the form of a first mortgage, covering the franchises and property of the proposed railroad and securing the issue of bonds mentioned in the subscriptions, was, at the city of New York, executed in part and thereupon sent by the railroad company to its attorney in Mexico to be executed and acknowledged by a corporate officer, "whose signature was necessary thereto, and which signature, with his acknowledgment, was not made and taken until after the paper had been received in Mexico." In the latter part of May, 1907, "while said instrument was still in the hands of said attorney, unrecorded, and before it had been translated into Spanish — which was a prerequisite to the recording thereof — it was recalled" by an officer of the railroad company, with the assent of all the parties to it, in order that some of its provisions relating to the manner in which bonds were to be certified by the

defendant might be modified or changed. With the authority of the parties to it certain provisions were replaced with new provisions. The materiality of the change is in this: The original instrument provided that the railroad company was entitled to certified bonds, or the proceeds of bonds sold and certified, at not exceeding a fixed sum per kilometer of *constructed railroad;* the reconstructed instrument authorized the trustee to certify the bonds or pay over the proceeds of bonds sold, upon the proof, as prescribed, that the bonds or the proceeds were "necessary and required for the purchase of materials or to pay for labor or services expended or to be expended in the construction of said line of railroad." The instrument as changed was *fully* executed on or about June 4, 1907, and was recorded in Mexico, August 12, 1907. In the fall of 1907 the railroad company, after suspending construction of the railroad, was adjudged bankrupt and its charter suspended. Between October 31, 1907, and December 23, 1907, pursuant to the authorization of the railroad company and upon proof in form as required by the instrument of June 4, 1907, the defendant certified bonds subscribed for, to the par value of $348,600, of which the plaintiff received November 27, 1907, $10,000. No other bonds were ever certified or issued. Only a part of the bed of the projected railroad had been graded and a little less than two miles of skeleton track, which could be run over by hand cars, had been laid.

The Appellate Division, upon reversing the interlocutory judgment, should have ordered a new trial. Upon a new trial the facts may be enlarged or changed in particulars material to the issues, under the findings submitted to us. Evidence may be presented as to whether or not the instrument of February 27, 1907, was completely executed, and conformed to the provisions, if any, of the laws of Mexico, essential to the creation by it of a lien upon the railroad, securing the bonds. The findings

do not determine those questions. So long as the provision of the subscriptions, that all the payments thereunder "shall be paid to the La Dicha & Pacific Railroad Company at the office of the Trust Company which shall be named as Trustee under the mortgage securing said bonds," remained the sole stipulation and agreement controlling the management and disposition of the payments, the moneys paid belonged unconditionally and unrestrictedly to the railroad company. It had elected that it would not exercise the right of canceling the subscriptions, by calling for their payment. Under them the defendant was not a trustee for the subscribers. It was merely the hand to receive and give receipts for the moneys paid by the subscribers, and pay the moneys to the railroad company. The subscribers trusted the railroad company to honestly and properly use them, and whatever improvidence was in the arrangement was their own. The defendant is not liable to the subscribers for any portion of their payments, which it paid to or for the railroad company while such conditions existed. The instrument of February 27, 1907, in form, created a wholly different situation between the railroad company and the defendant, and original and new relations between the subscribers and the defendant, which became fixed and unchangeable, in the absence of the consent of the subscribers, in case it was *the mortgage* securing the bonds, contemplated and provided for by the subscriptions. Then the defendant became the trustee for them as, and for the purposes, prescribed by it, and it controlled the payment and disposition of the subscription moneys which the defendant had when it became such mortgage or thereafter received, and they must be accounted for. If it did not become such mortgage then the defendant continued to act under the subscription agreement until the instrument of June 4, 1907, became such mortgage, if, in fact, it did.

It is evident, from what we have written that it is or

may be material, in ascertaining the liability of the defendant, to determine whether the defendant had subscription moneys when the instrument of February 27, 1907, created a lien, if it ever did, upon the franchises and property described in it, or thereafter received any of those moneys. Upon a new trial evidence may be given in relation thereto. It is not our purpose to define herein the character of the evidence which may be received upon a new trial. We have written to show that there are reasons requiring, under the findings of the learned referee, that a new trial should be ordered.

The order of the Appellate Division should be modified so as to reverse the interlocutory judgment entered upon the decision of the referee and order a new trial, costs to abide the event, and as modified affirmed, without costs of the appeal to either party.

CULLEN, Ch. J., GRAY, WERNER, WILLARD BARTLETT, HISCOCK and CHASE, JJ., concur.

Judgment reversed and order modified so as to grant a new trial.