---

(152 App. Div. 488.)

PEOPLE ex rel. NEW YORK CENT. & H. R. R. CO. v. HANKING et al., Assessors.

(Supreme Court, Appellate Division, Second Department. September 10, 1912.)

1. TAXATION (§ 391*)—ASSESSMENT—RAILROAD PROPERTY.

Where a railroad traverses several towns, the value of its property for assessment in a particular town is the reasonable cost of reproducing the structures, added to the value of the roadbed as land; but the rule is not conclusive, and, where the structures are disproportionate to the proper use of the land for railroad purposes, the cost will not be con- sidered in ascertaining the value.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 660–666; Dec. Dig. § 391.*]

2. TAXATION (§ 391*) — ASSESSMENT — RAILROAD PROPERTY — TUNNELS AND GRADES.

In determining the value of a railroad right of way for taxation, it will be assessed with relation to its value for railroad purposes; and though grading and a tunnel would not add anything to the value of the

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

land which formed the roadbed, as land, where they were necessary to their proper use for railroad purposes, the reasonable cost of their reproduction may be considered in making the assessment.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 660-666; Dec. Dig. § 391.*]

3. REFERENCE (§ 99*)—REPORT—CONSTRUCTION AND OPERATION—EFFECT OF STIPULATIONS.

On review of a certiorari proceeding to review an assessment of railroad property for taxation, the court could review the determination of a referee, though the stipulation for his appointment provided that he might make such examination of the property as he desired, and he did make such view, where he did not state in his report that the view had any share in his determination, but declared that it was based upon a consideration of the "allegations and proofs of the parties."

[Ed. Note.—For other cases, see Reference, Cent. Dig. §§ 148-156; Dec. Dig. § 99.*]

4. REFERENCE (§ 99*)—REPORT—CONSTRUCTION—REFERENCE—STIPULATIONS.

An appointment of a referee in a certiorari proceeding to review an assessment of railroad property for taxation under a stipulation that he might "make such examination of the relator's property as he desires" will not authorize such referee to substitute his own opinions, even after a view of the property, for such facts as were previously established by a formal stipulation of the parties and uncontroverted testimony of witnesses.

[Ed. Note.—For other cases, see Reference, Cent. Dig. §§ 148-156; Dec. Dig. § 99.*]

5. APPEAL AND ERROR (§ 1175*)—APPELLATE DIVISION—TRIAL JUDGMENT.

The Appellate Division could not award a final judgment in a certiorari proceeding to review an assessment of railroad property for taxation where the amount at which the property should be assessed is in dispute, as upon a new trial the facts may appear differently.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4573-4587; Dec. Dig. § 1175.*]

Appeal from Special Term, Rockland County.

Certiorari proceedings by the People on the relation of the New York Central & Hudson River Railroad Company against William H. Hanking and others, assessors of the town of Clarkstown, to review an assessment of the relator's property for taxation. From an order confirming the report of a referee, respondents appeal. Reversed, and referee's report vacated.

Argued before HIRSCHBERG, THOMAS, CARR, WOODWARD, and RICH, JJ.

George A. Blauvelt, of New York City, for appellants.
Amos H. Van Etten, of Roundout, for respondent.

CARR, J. This is an appeal from an order of the Special Term in Rockland county that confirmed the report of a referee in a certiorari proceeding to review the assessment of the relator's property in the town of Clarkstown, Rockland county, for the year 1909. The real property in question consisted of nearly 7 miles of railroad bed and track on a right of way, aggregating 98 acres of land, together with the various railroad structures of the relator thereon, including bridges, tunnels, embankments, and other constructions incidental to

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the use of the land for steam railroad purposes. In 1909 the real property in question was assessed originally at the sum of $350,000, made up of items as follows: "98 acres of land, $4,900. Tunnels, tracks, superstructure, roadbed, masonry and buildings, $345,100." The relator appeared before the assessors, and objected to the assessment so made, on the ground that it was excessive in amount, and unequal in proportion to the rate of assessed valuation made generally upon other real estate in the town. The assessors thereafter reduced the assessed valuation to the sum of $300,000. The relator thereupon obtained a writ of certiorari to review said final assessment, on the same grounds as it had urged before the assessors. A referee was appointed who took the testimony offered by the respective parties, and who reported to the effect that the actual value of the real property of the relator in the town in question, at the time of the assessment, was the sum of $300,000. He recommended a reduction of the assessment in question to the sum of $205,000, on the ground that the real property in the town was assessed generally in the year 1909 at the proportion of but 68⅓ per cent. of its actual value, thus requiring, on the ground of inequality of assessment, a reduction of the amount of the relator's assessment from $300,000 to $205,000. From an order made at Special Term, confirming the report of the referee, the respondents have appealed. The serious question arising upon this appeal is as to the finding of the referee that the actual value of the real estate in question at the time of the assessment was $300,000. The respondent contends that the proofs taken before the referee, together with a formal stipulation (which appears in the record) as to certain valuations of various parts of the railroad, considered as a completed railroad structure, show, without controversy, that the actual value of the real estate in question at the time of the assessment in 1909 was $410,711.25. If all the items which go to make up the last-mentioned sum were to be considered by the assessors in making the assessment in question then, it is difficult, if not impossible, to understand why the actual value of the real estate was determined at the amount fixed by the referee, instead of at the amount claimed by the appellants. The railroad in question ran over a very irregular surface for the greater part of the route within the town. A large tunnel had to be bored through a mountain as a part of the relator's right of way, and it was stipulated at the trial before the referee that the reasonable cost of reproduction of this tunnel at the time of the assessment was the sum of $125,000. There was also in the construction of the railroad in question very considerable grading, and it was likewise stipulated that the reasonable cost of reproduction of the grading at the time of the assessment would be the sum of $110,000. The relators took the position before the referee that the cost of reproduction of the tunnel, or of the grading, was not a proper item for consideration by the assessors in assessing the value of the relator's real estate. While the report of the referee does not contain any findings showing the items from which the referee arrived at his determination of the value of $300,000, yet it seems plainly ap-

parent that in arriving at this amount he must have necessarily excluded altogether the item of cost of a reproduction of the grading; for, deducting the amount of said cost as agreed upon formally by the parties, the difference between the amount fixed by the referee and that contended for by the appellants becomes accounted for at once, apparently.

[1] The general rule for the assessment of the real estate of a railroad corporation within the boundaries of a town where the railroad itself, as in this case, traverses several towns, is that the reasonable cost of reproducing the railroad structures, added to the value of the roadbed as land, is presumptively the value of the railroad considered as real property for the purposes of assessment for taxation. People ex rel. Delaware, L. & W. R. R. Co. v. Clapp et al., 152 N. Y. 490, 46 N. E. 842, 39 L. R. A. 237. This rule is presumptive rather than conclusive, for there may be instances where the structures existing upon the land are disproportionate to the proper use of the land for railroad purposes, and thus do not, to the extent of the cost of reproduction, add to the value of the railroad system considered as real estate. There was, however, no proof before the referee in this case disclosing such condition.

[2] The respondent urges, however, that the referee was justified in disregarding as elements of value for assessment purposes the cost of reproduction of either or both the tunnel and the grading. It is not suggested that either the tunnel through the mountain or the grading of the roadbed were unnecessary to a proper use by the relator of its right of way for steam railroad purposes, and it is difficult to see how such a suggestion could be made justifiably. Some of the witnesses who testified before the referee expressed the opinion that neither the tunnel nor the grading added anything to the value of the land which formed the roadbed, but it is apparent that in giving such opinion they had in mind the roadbed considered simply as land, disassociated from its actual use for railroad purposes. This, however, is not the test, for the value of the property in question was to be assessed with relation to its use for railroad purposes. It seems plain enough that the land forming the roadbed of the tunnel would have been of no or little use for railroad purposes unless the tunnel was constructed, in which event the existence of the tunnel unquestionably added to the value of such land. It was likewise as to the grading in question, for without such grading it is plain the land could not have been used for the purposes for which it is held by the relator. Under these circumstances, there appears no justification for any exclusion by the referee of the element of the reasonable cost of reproduction of either the tunnel or the grading.

[3] It is urged, however, by the respondent that this court cannot review the determination of the referee on these questions, because it was stipulated at the trial before him that he might "make such examination of the relator's property as he desires," and that he did view said property before determining the questions litigated before him. The referee did not state in his report that the view made by

him had any share in his determination as to the facts. The report declared that it was based upon a' consideration of the "allegations and proofs of the parties."

[4] In any event, we think that the fair intent of the stipulation did not confer upon the referee the power to substitute his own opinions, even after a view of the relator's real estate, for such facts as were established before him by formal stipulation of the parties and by the uncontroverted testimony of the various witnesses. In our opinion, it appears presumptively from the record that at the time of the assessment in question the real property of the relator in the town of Clarkstown was, for purposes of taxation, of a value exceeding $400,000, and that the referee in estimating it at the amount of $300,-000 erred. In fact, the uncontradicted proofs before the referee would have justified a valuation of $410,711.25.

[5] This court, however, is not in a position to make a final determination upon this question of value, as upon a new trial the facts may appear differently. Elliott v. Guardian Trust Co., 204 N. Y. 212, 97 N. E. 521.

The order of the Special Term should` be reversed and the report of the referee vacated, and a new hearing ordered before a new referee to be appointed at Special Term, with costs.