HIRSCHBERG and CARR, JJ., concurred; THOMAS, J., voted to affirm upon the ground that no negligence on the part of respondent is shown, with whom JENKS, P. J., concurred.

Order affirmed, with costs to abide the event, on the ground stated in the opinion of WOODWARD, J.

---

THE PEOPLE OF THE STATE OF NEW YORK ex rel. THE NEW YORK CENTRAL AND HUDSON RIVER RAILROAD COMPANY, Respondent, *v.* WILLIAM H. HANKING and Others, Assessors of the Town of Clarkstown, County of Rockland and State of New York, Appellants.

Second Department, September 10, 1912.

Tax — assessment of railroad lands — when cost of reproducing railroad structures should be considered — reference — stipulation as to powers of referee — order confirming assessment reversed — when Appellate Division will not make determination.

As a general rule in assessing for taxation the real estate of a railroad corporation within the boundaries of a town, where the railroad itself traverses several towns, the reasonable cost of reproducing the railroad structures should be taken and added to the value of the roadbed as land. This is presumptively the value of the railroad considered as real property. The rule, however, is presumptive rather than conclusive, as where the railroad structures are disproportionate in value to the proper use of the land for railroad purposes.

The cost of reproducing railroad structures, such as tunnels and grading, should be considered where they are necessary to the use of the land for railroad purposes.

Where there is a reference ordered on certiorari proceedings to review an assessment of railroad property, a stipulation of parties that the referee may "make such examination of the relator's property as he desires" did not confer upon him the power to substitute his own opinions for the facts established by the parties, even after a view of the real property.

Evidence in a proceeding to review an assessment of railroad property examined, and *held*, that an order confirming the report of the referee should be reversed in that the assessment was too low.

The Appellate Division will not, however, make a final determination as to value where upon a new trial different facts may appear.

APPEAL by the defendants, William H. Hanking and others, assessors of the town of Clarkstown, Rockland county, N. Y., from an order of the Supreme Court, made at the Orange Special Term and entered in the office of the clerk of the county of Rockland on the 11th day of February, 1911, confirming the report of a referee.

*George A. Blauvelt,* for the appellants.

*Amos Van Etten,* for the respondent.

CARR, J.:

This is an appeal from an order of the Special Term in Rockland county that confirmed the report of a referee in a certiorari proceeding to review the assessment of the relator's property in the town of Clarkstown, Rockland county, for the year 1909. The real property in question consisted of nearly seven miles of railroad bed and track on a right of way, aggregating ninety-eight acres of land, together with the various railroad structures of the relator thereon, including bridges, tunnels, embankments and other constructions incidental to the use of the land for steam railroad purposes. In 1909, the real property in question was assessed originally at the sum of $350,000, made up of items as follows: "98 acres [of land], $4,900. Tunnels, tracks, superstructure, roadbed, masonry and buildings, $345,100." The relator appeared before the assessors and objected to the assessment so made, on the ground that it was excessive in amount, and unequal in proportion to the rate of assessed valuation made generally upon other real estate in the town. The assessors thereafter reduced the assessed valuation to the sum of $300,000. The relator thereupon obtained a writ of certiorari to review said final assessment, on the same grounds as it had urged before the assessors. A referee was appointed who took the testimony offered by the respective parties, and who reported to the effect that the actual value of the real property of the relator in the town in question, at the time of the assessment, was the sum of $300,000. He recommended a reduction of the assessment in question to the sum of $205,000, on the ground that the real property in the town was assessed generally, in the year 1909, at the proportion of but

490   People ex rel. N. Y. C. & H. R. R. R. Co. *v.* Hanking.

Second Department, September, 1912.          [Vol. 152.

sixty-eight and one-third per cent of its actual value, thus requiring, on the ground of inequality of assessment, a reduction of the amount of the relator's assessment from $300,000 to $205,000. From an order made at Special Term, confirming the report of the referee, the respondents have appealed. The serious question arising upon this appeal is as to the finding of the referee that the actual value of the real estate in question, at the time of the assessment, was $300,000. The appellants contend that the proofs taken before the referee, together with a formal stipulation (which appears in the record) as to certain valuations of various parts of the railroad, considered as a completed railroad structure, show, without controversy, that the actual value of the real estate in question at the time of the assessment in 1909 was $410,711.25. If all the items which go to make up the last-mentioned sum were to be considered by the assessors in making the assessment in question, then it is difficult, if not impossible, to understand why the actual value of the real estate was determined at the amount fixed by the referee instead of at the amount claimed by the appellants. The railroad in question ran over a very irregular surface for the greater part of the route within the town. A large tunnel had to be bored through a mountain as a part of the relator's right of way, and it was stipulated at the trial before the referee that the reasonable cost of reproduction of this tunnel at the time of the assessment was the sum of $125,000. There was also in the construction of the railroad in question very considerable grading, and it was likewise stipulated that the reasonable cost of reproduction of the grading at the time of the assessment would be the sum of $110,000. The relator took the position before the referee that the cost of reproduction of the tunnel, or of the grading, was not a proper item for consideration by the assessors in assessing the value of the relator's real estate. While the report of the referee does not contain any findings showing the items from which the referee arrived at his determination of the value of $300,000, yet it seems plainly apparent that, in arriving at this amount, he must have necessarily excluded altogether the item of cost of a reproduction of the grading. For, deducting the amount of said cost as agreed upon formally by the parties,

the difference between the amount fixed by the referee and that contended for by the appellants becomes accounted for at once, apparently.

The general rule for the assessment of the real estate of a railroad corporation within the boundaries of a town where the railroad itself, as in this case, traverses several towns, is that the reasonable cost of reproducing the railroad structures, added to the value of the roadbed as land, is presumptively the value of the railroad considered as real property for the purposes of assessment for taxation. (*People ex rel. Delaware, L. & W. R. R. Co.* v. *Clapp*, 152 N. Y. 490.) This rule is presumptive rather than conclusive, for there may be instances where the structures existing upon the land are disproportionate to the proper use of the land for railroad purposes, and thus do not, to the extent of the cost of reproduction, add to the value of the railroad system considered as real estate. There was, however, no proof before the referee in this case disclosing such condition. The respondent urges, however, that the referee was justified in disregarding as elements of value for assessment purposes the cost of reproduction of either or both the tunnel and the grading. It is not suggested that either the tunnel through the mountain or the grading of the roadbed were unnecessary to a proper use by the relator of its right of way for steam railroad purposes, and it is difficult to see how such a suggestion could be made justifiably. Some of the witnesses who testified before the referee expressed the opinion that neither the tunnel nor the grading added anything to the value of the land which formed the roadbed, but it is apparent that in giving such opinion they had in mind the roadbed considered simply as land, disassociated from its actual use for railroad purposes. This, however, is not the test, for the value of the property in question was to be assessed with relation to its use for railroad purposes. It seems plain enough that the land forming the roadbed of the tunnel would have been of no or little use for railroad purposes unless the tunnel was constructed, in which event the existence of the tunnel unquestionably added to the value of such land. It was likewise as to the grading in question, for without such grading it is plain the land could not have been used for the purposes for which

it is held by the relator. Under these circumstances there appears no justification for any exclusion by the referee of the element of the reasonable cost of reproduction of either the tunnel or the grading. It is urged, however, by the respondent that this court cannot review the determination of the referee on these questions, because it was stipulated at the trial before him that he might "make such examination of the relator's property as he desires," and that he did view said property before determining the questions litigated before him. The referee did not state in his report that the view made by him had any share in his determination as to the facts. The report declared that it was based upon a consideration of the " allegations and proofs of the parties." In any event, we think that the fair intent of the stipulation did not confer upon the referee the power to substitute his own opinions, even after a view of the relator's real estate, for such facts as were established before him by formal stipulation of the parties and by the uncontroverted testimony of the various witnesses. In our opinion, it appears presumptively from the record that at the time of the assessment in question the real property of the relator in the town of Clarkstown was, for purposes of taxation, of a value exceeding $400,000, and that the referee in estimating it at the amount of $300,000 erred. In fact, the uncontradicted proofs before the referee would have justified a valuation of $410,711.25. This court, however, is not in a position to make a final determination upon this question of value, as upon a new trial the facts may appear differently. (*Elliott* v. *Guardian Trust Co.*, 204 N. Y. 212.)

The order of the Special Term should be reversed and the report of the referee vacated, and a new hearing ordered before a new referee to be appointed at Special Term, with costs.

Hirschberg, Thomas, Woodward and Rich, JJ., concurred.

Order of the Special Term reversed, report of referee vacated, and a new hearing ordered before a new referee to be appointed at Special Term, with costs of this appeal.