(124 App. Div. 600.)

BOTTOME v. NEELEY et al.

(Supreme Court, Appellate Division, First Department. March 6, 1908.)

1. EXECUTORS AND ADMINISTRATORS — PERSONAL LIABILITY — COUNSEL AND STENOGRAPHER'S SERVICES.

Ordinarily in litigation by or against executors or administrators, where they employ counsel or stenographers, they are personally liable, though the litigation is for the benefit of the estate, and is prosecuted or defended in their representative capacity, since they cannot bind the estate by an affirmative contract they may make respecting it. One may, however, bargain not to hold the administrator or executor personally, and look to the estate only or to such allowances as may be made in the action or proceeding for his compensation, and where a referee and an unofficial ste-

nographer in a proceeding against administrators acquiesced in a stipulation between the parties that the referee's and stenographer's fees should be paid out of the estate, the administrators cannot be held personally liable therefor.

2. SAME—EXPENSES—WHEN A FIXED CHARGE.
The expenses of a referee's hearing in a proceeding against administrators were subject to approval and allowance by the surrogate, and, in the absence of an express agreement to pay, did not become a fixed charge against the estate or the administrators until passed upon and allowed by him.

3. SAME.
Where a referee and unofficial stenographer acquiesced in an agreement that their fees under a reference in a proceeding against administrators should be paid out of their estate, the assignee of their claims cannot recover against the administrators personally on a quantum meruit.

4. REFERENCE—REFEREE'S FAILURE TO REPORT—EFFECT ON FEES.
Under the express terms of Code Civ. Proc. § 1019, a referee forfeits his right to fees by failing to file a report within the time prescribed by law.

5. SAME—STENOGRAPHER'S FEES.
Where an unofficial stenographer consents that his fees on a referee's hearing be made a part of the referee's fees, and the referee forfeits his fees under Code Civ. Proc. § 1019, by failing to file his report in time, the stenographer's fees are forfeited, his remedy being against the referee.

6. SAME.
Though generally litigants are liable to the referee and the stenographer for their services under a reference, the liability may be avoided by express contract or by stipulation.
Scott and Laughlin, JJ., dissenting.

Appeal from Appellate Term.

Proceeding by Willard B. Bottome against James R. Neeley and another. From an order of the Appellate Term (54 Misc. Rep. 258, 104 N. Y. Supp. 429), reversing a judgment for him and granting a new trial, plaintiff appeals. Affirmed.

Argued before PATTERSON, P. J., and McLAUGHLIN, LAUGHLIN, HOUGHTON, and SCOTT, JJ.

Charles A. Maas, for appellant.
Sanford S. Gowdey, for respondent.

HOUGHTON, J. The defendants were administrators of the goods, chattels, and credits of one Agnes C. Taylor, deceased, and had given a bond as such in the sum of $200. Thereafter a proceeding was begun in the Surrogate's Court to compel them to file an additional bond. On this proceeding the surrogate appointed a referee to take evidence and report his opinion thereon. On the hearing before the referee a stenographer was employed, and at the beginning of the hearing a stipulation was entered into between the parties, taken down by the stenographer, to the effect that the stenographer, naming him, be employed, and that he furnish copies of the minutes at a stipulated rate, with a stipulated per diem allowance, and with the further provision that his fees and allowance "be made a part of the referee's fees and paid out of the estate on the taking up of the referee's report." The hearing proceeded to its termination, and, the referee failing to file his report within the 60 days prescribed by section 1019 of the Code

of Civil Procedure, the administrators served notice, as prescribed by that section, that they elected to terminate the reference. Some 10 months thereafter, and after assignment by the referee and stenographer of their claims to this plaintiff had been made and this action begun, the referee filed his report showing that the administrators had in their hands the sum of $250, and hence that their bond ought to be made $500—his fees being $150 and those of the stenographer $338.25. This report was never acted upon by the surrogate, nor was there any allowance of the fees charged. The plaintiff recovered a judgment against the defendants personally in the Municipal Court, and on their appeal the Appellate Term reversed the same, and ordered a new trial. An order was made permitting the plaintiff to appeal to this court, and it was perfected by giving the usual stipulation for judgment absolute in case of affirmance. We are of the opinion that the order of reversal was proper, and should be affirmed.

Ordinarily in any litigation by or against executors or administrators where they employ counsel or stenographers they are personally liable, notwithstanding the litigation is for the benefit of the estate, and is prosecuted or defended in their representative capacity. This is so because they have no power to bind the estate by any affirmative contract which they may make with respect to it. A person may, however, bargain not to hold the administrator or executor personally and to look to the estate only, or to such allowances as may be made in the action or proceeding for his compensation.

In the proceeding ordered by the surrogate the estate had been alleged to be only $100 in amount. It was sought to show that it was larger and the reference was for that purpose. At the beginning of the hearings it was stipulated that whatever the referee's fees should be they should be payable out of the estate. The referee could make such a bargain if he saw fit. Even though the administrators had no power to bind the estate, they did have power to contract with the referee that he should look to the estate for his compensation, and not to them individually. The same is true of the stenographer. The referee sat by and heard the stipulation and presumably acquiesced in it. The stenographer took it down, and if he did not choose to continue his employment on those conditions it was his privilege to protest and obtain some other arrangement as to his fees or withdraw from the case. He was not an official stenographer compelled to attend, but could do as he saw fit. Both the referee and the stenographer must be presumed to have acquiesced in the stipulation and to have performed their services in accordance with it. The proceeding resulted in the discovery of $150 making a total estate of $250 only. The aggregate amount of the referee's and stenographer's fees is nearly twice the gross estate. The expenses of the hearing were subject to approval and allowance by the surrogate, and, in the absence of an express agreement to pay, did not become a fixed charge against the estate or the administrators until they were passed upon and allowed by him. The report has never been confirmed, nor has any allowance been made. It is very problematical if the surrogate would ever allow the fees at any such sum as charged. It does not change the situation

that plaintiff has brought his action on quantum meruit. By an action in such form he cannot escape the express bargain which his assignors made.

In addition, the referee failed to file his report within the time prescribed by law, and such failure forfeited his rights to any fees whatever. Such is the express provision of section 1019 of the Code. The stenographer, by the stipulation which he acquiesced in, consented that his fees be made a part of the referee's fees. If the referee by his own act forfeited his fees then the stenographer's fees, which formed a part of them, were forfeited as well. They could not survive when the fees themselves were lost, and his remedy is against the referee rather than these defendants. As a general rule, in the absence of a stipulation or contract, parties to a litigation are liable to the referee and stenographer for their services. The rule is not so inflexible, however, that it cannot be varied by express contract or by a stipulation which amounts to the same thing.

We are of the opinion that the plaintiff's assignors had no claim against the defendants personally, and that the Appellate Term properly reversed the judgment in plaintiff's favor.

The order should be affirmed, with costs, and judgment absolute directed against plaintiff upon his stipulation.

PATTERSON, P. J., and McLAUGHLIN, J., concur.

SCOTT, J. (dissenting). The plaintiff sues as assignee of Clarence Bonynge, a stenographer, and John S. Jenkins, a lawyer, for stenographer's fees and referee's fees. The complaint alleges that between certain dates the assignor Bonynge rendered and performed for the defendants work, labor, and services as stenographer, at the request of said defendants, and that for said services so rendered the defendants agreed to pay said Bonynge the sum of $338.25, which is alleged to be the reasonable value of said services. It is also alleged that the assignor Jenkins was appointed referee by one of the surrogates of the county of New York, in a certain proceeding, and the reference proceeded before said assignor, the reasonable value of his services being $150. The defendants appellants are respectively administrator and administratrix of the goods, chattels, and effects of Agnes C. Taylor, deceased.

In April, 1905, one Maria L. Davis (a defendant, but not appealing), who was interested in the estate of said Agnes C. Taylor, deceased, presented a petition to the Surrogate's Court praying that the appellants be required to give additional security as administrator and administratrix. An order was thereupon made referring it to plaintiff's assignor Jenkins to take evidence and report to the surrogate. Plaintiff's assignor Bonynge was employed to act as stenographer upon the reference, and at the first meeting the attorneys for the petitioner and for the administrator entered into the following stipulation:

"It is stipulated by and between the parties hereto that Clarence Bonynge be employed as stenographer, that he furnish one copy of the minutes, and that his fees, at the rate of twenty-five cents per folio, and five dollars per diem in case the testimony taken at any one hearing does not at the folio

rate aggregate five dollars, or in case two hours' notice of adjournment is not given, be made part of the referee's fees and paid out of the estate on the taking up of the referee's report."

Bonynge, so far as appears, took no part in the stipulation, unless he can be deemed to have done so because he was present when it was made, and took it down stenographically as a part of the minutes. The defense to the claim for the stenographer's fees rests upon two propositions. It is said that the appellants participated in the proceeding, and employed Bonynge in their representative capacity as administrators, and that no personal claim can be enforced against them, and it is further said that, by sitting quietly by when the above-quoted stipulation was made between the attorneys, Bonynge acquiesced therein, and agreed that his fees should be made part of the referee's fees and paid out of the estate, and hence that, whatever might have been his rights under other circumstances, he cannot in this action recover from the appellants personally.

It is well settled that parties to a reference, even if ordered against their objection, are liable for the fees of the referee and the stenographer, where they have agreed by their attorneys that a stenographer shall be employed. Russell v. Lyth, 66 App. Div. 291, 72 N. Y. Supp. 615; Bottome v. Alberst, 47 Misc. Rep. 665, 94 N. Y. Supp. 348.

The general rule respecting contracts made by executors or administrators, although for the benefit of the estate, is that the executor or administrator becomes primarily personally liable, although in a proper case he may be permitted to recoup himself out of the funds of the estate. Austin v. Munroe, 47 N. Y. 360; O'Brien v. Jackson, 167 N. Y. 31, 60 N. E. 238; Shaffer v. Bacon, 35 App. Div. 248, 54 N. Y. Supp. 796. In O'Brien v. Jackson, supra, the action was brought against the defendants as executors for repairs made upon property of the estate. It was held that the action could not be maintained, the court saying:

"The general rule is well settled in this state that executors or trustees cannot by their executory contracts, although made in the interest and for the benefit of the estate they represent, if made upon a new and independent consideration, bind the estate, and thus create a liability not founded upon the contracts or obligations of the testator."

It was pointed out that only in exceptional cases could an executor, and the same rule applies to an administrator, charge the estate in favor of a person making an expenditure for its benefit. Such a charge can be enforced only in an equitable action to which all persons interested in the estate are parties. The result of the cases is, as stated in Foland v. Dayton, 40 Hun, 563, that the administrator himself will be personally liable for the value of services rendered at his instance for the benefit of the estate, where there is no agreement on the part of the creditor to look to or confine his claim for compensation to the estate itself, or to the defendant in his individual capacity. It follows, therefore, that but for the stipulation between the attorneys Bonynge would have had an undoubted claim against the appellants personally for the value of his services. Did that stipulation act as an agreement on his part to look only to the estate? On its face, it was no agree-

ment by him at all. It was entered into between the parties to the proceeding, and these were the petitioners on the one hand and these appellants on the other. The stipulation was one such as parties frequently make under like circumstances for their protection against each other. Without some such stipulation, neither party could have taxed the stenographer's fees against the other, and it is quite probable that the surrogate, if the successful party had objected, would have refused to charge the expenses of the unsuccessful party upon the estate. This, as I consider, was the sole consideration upon which the stipulation was entered into. It was intended to provide, as between the parties themselves, that the cost of employing a stenographer should be treated as a part of the referee's fees and paid out of the estate. With this agreement the stenographer had nothing to do. He did not in terms become a party to it, and he could not have prevented the parties from entering into it if he had wished to, and it would certainly present an extreme case of finding an implied consent on his part to look to the estate and not the individual, from the fact that he stood silent while the parties entered into a stipulation for their own protection against each other, which he would have been powerless to prevent if he wished to do so, and which it would have been impertinent on his part to have objected to. So far, then, as concerns the claim for the stenographer's fees, the reasonableness of which is not contested, the judgment of the Municipal Court was right.

The claim for the referee's fees cannot however prevail. Passing the question whether or not the reference was terminated, the referee's right to his fees did not become complete until he made and delivered or filed his report. The record shows that this action was commenced before this was done.

The determination of the Appellate Term should be reversed, and the judgment of the Municipal Court reduced by the amount allowed for the referee's fees, with interest, and, as so modified, affirmed, without costs to either party in this court or the Appellate Term.

LAUGHLIN, J., concurs.