(89 Misc. Rep. 297)

### DWANE v. MILLER et al.

(City Court of New York, Trial Term. February 1, 1915.)

1. Executors and Administrators ⬤⇒96—Contracts—Personal Liability.
  Executors and administrators are personally liable upon their contracts, unless the parties with whom they contract expressly agree to look to the estate alone for payment, and not to the executors or administrators personally, and a mere intention to look to the estate is not sufficient to exclude the individual liability.
  [Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 410, 412, 413, 417, 418; Dec. Dig. ⬤⇒96.]

2. EXECUTORS AND ADMINISTRATORS ⬤⇒96—CONTRACTS—PERSONAL LIABILITY.
Where services are rendered at the instance of an executor or administrator for the benefit of the estate, under an agreement on the part of the party rendering the services to look or confine his claim for compensation to the estate itself, such party will be confined to the rights or remedies existing for the enforcement of the agreement made by him, and may not resort to the personal representative individually.
[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 410, 412, 413, 417, 418; Dec. Dig. ⬤⇒96.]

3. EXECUTORS AND ADMINISTRATORS ⬤⇒221—LIABILITY ON CONTRACTS—EVIDENCE.
An agreement on the part of a person rendering services under a contract with an executor or administrator to look to the estate alone for compensation may be established by the language used when the agreement is alleged to have been made, or by circumstances disclosing the nature and effect thereof.
[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 901–903½, 1858, 1861–1863, 1865, 1866, 1871–1874, 1876; Dec. Dig. ⬤⇒221.]

4. EXECUTORS AND ADMINISTRATORS ⬤⇒507—CONTRACT—PERSONAL LIABILITY.
On a reference in a proceeding for the judicial settlement of the account of an executor, a stipulation fixing the fees of the referee and providing that they should be taxed as a cost against the estate in the first instance was not such a plain agreement by the referee to look to the estate for compensation as prevented a recovery against the executor; it appearing that there was no money in the estate from which the referee could be paid, and no assets within the state or within the jurisdiction of its courts, though there was sufficient money in the hands of the ancillary administrator in another state to pay the referee.
[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 2004, 2005, 2178–2191; Dec. Dig. ⬤⇒507.]

5. EXECUTORS AND ADMINISTRATORS ⬤⇒518—LIABILITY ON CONTRACTS—PRIVITY OF CONTRACT.
There was no privity of contract, justifying a recovery against an ancillary administrator in another state by a person contracting with an executor.
[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 2299–2309; Dec. Dig. ⬤⇒518.]

Action by John T. Dwane against Gordon D. Miller and another. A verdict was directed for plaintiff, and defendants move for a new trial. Motion denied.

Hill, Lockwood, Redfield & Lydon, of New York City (Richard P. Lydon, of New York City, of counsel), for plaintiff.

Worran & Wielar (Abraham Wielar, of New York City, of counsel), for defendants.

FINELITE, J.   This action came on for trial before the court and a jury.   The plaintiff offered in evidence documentary proof as well as the evidence by the plaintiff's assignor.   He also offered in evidence certain stipulations, which were acquiesced in by the defendants.   Both sides then rested.   The plaintiff and defendant each moved for a direction.   The court then directed a verdict in plaintiff's favor for the amount claimed, with interest.   The defendants then moved for a new trial.   It appears from the facts that the action was brought by the

⬤⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

plaintiff, as assignee, to recover the sum of $420 referee's fees and also the sum of $155 stenographer's fees on two separate and distinct causes of action as alleged in the complaint.

It appears, further, that heretofore, and on the 16th day of February, 1912, by an order made in the Surrogate's Court of this county in a proceeding then pending in said Surrogate's Court entitled In the Matter of the Judicial Settlement of the Account of Gordon D. Miller, as Executor, etc., of Alexander Miller, Deceased, that the plaintiff's assignor, a member of the bar, was duly appointed referee to hear and determine all the questions arising out of said account and the objections thereto. The defendant Gordon D. Miller was the executor whose account was involved in the Surrogate's Court proceeding, and the defendant Mary Ella Miller had filed objections to that account. At the first hearing before the referee, the defendants appeared before said referee by counsel and entered into the following stipulation as to the fees of the referee, which stipulation was marked in evidence on the trial hereof and which reads as follows:

"It is stipulated by and between the respective parties that the referee's fees as fixed by statute be waived, and that he charge at the rate of $10 per hour or for such fraction over an hour while engaged in the business of the reference, and $10 for each adjournment where less than twenty-four hours' notice is given, *the same to be taxed as a cost against the estate in the first instance.*"

A further stipulation was entered into in reference to the stenographer's fees, which stipulation was marked in evidence and which reads as follows:

"It is stipulated that Paul Jones be appointed as stenographer to report the proceedings, and the stenographer shall furnish two copies of the minutes, at the rate of 30 cents per folio for two copies, and $5 per diem in case the testimony taken at any one hearing does not, at the folio rate, aggregate $5, and in case two hours' notice of adjournment be not given."

The reference was thereafter had, a report was made by said referee and filed in the office of the Surrogate's Court, and by said report it showed that there was a deficit of upwards of $109,000, and it further appeared by the report that there was a balance in the sum of $90.04 as a surcharge, but which did not represent actual moneys in the executor's hands. Said report was marked in evidence as an exhibit. It further appeared on the trial hereof that on July 10, 1914, the amount of the referee's fees and the stenographer's fees were duly taxed by the Surrogate's Court, and an order was entered on said taxation on said date, on notice to the defendants.

The evidence further shows that an ancillary administrator of the Miller estate was appointed in the state of New Jersey, and that he had in his hands enough moneys to pay the plaintiff's claim, and that in the month of August, 1913, a demand was made on the ancillary administrator for the payment of said referee's and stenographer's fees, but that said administrator refused to pay the same. The defendants contend, and Gordon D. Miller, one of the defendants here claims, that the estate, of which he was the executor, is solely liable therefor. It appears that an action to recover the claims herein had been brought in the Municipal Court of the City of New York, through

a different assignee, which resulted in a verdict in favor of the plaintiff. Upon appeal therefrom to the Appellate Term of the Supreme Court the judgment was reversed, the said appellate court holding (by the syllabus of said case to the effect) that:

"Where the parties to a reference at the first hearing by stipulation waived the referee's fees as fixed by statute, and agreed that he should charge a specified rate for his services, 'the same to be taxed as a cost against the estate in the first instance,' the referee could not recover against the parties individually upon the stipulation until the costs had been taxed by the surrogate."

And holding further:

"In this case, that apparently the conditions of the contract had not yet been complied with, and therefore the plaintiff has failed to make out a cause of action."

See Albert v. Miller, 85 Misc. Rep. 16, 147 N. Y. Supp. 50.

After said judgment was reversed, acting upon the suggestion pointed out in said opinion, the referee immediately proceeded to procure an order of the Surrogate's Court taxing the fees, which order was marked in evidence on the trial thereof. The action was thereupon brought de novo through the present assignee as plaintiff herein against the same defendants.

[1] As an elementary principle of law executors and administrators are personally liable upon their contract, and a guardian cannot enforce such contracts against the estate. In Schmittler v. Simon, 101 N. Y. 554, at page 557, 5 N. E. 452, at page 453 (54 Am. Rep. 737), Ruger, C. J., laid down the following rule of law:

"Neither executors nor administrators have power to bind the estate represented by them through an executory contract, having for its object the creation of a new liability, not founded upon the contract or obligation of the testator intestate. They take the personal property as owners and have no principal behind them for whom they can contract. The title vests in them for the purposes of administration, and they must account as owners to the persons ultimately entitled to distribution. In actions upon contracts made by them, however they may describe themselves therein, they are personally liable, and in actions thereon the judgment must be de bonis propriis. Not so, however, upon contracts made by the testator or intestate; in such case the judgment is always de bonis testatoris."

See Gillet v. Hutchinson, 24 Wend. 184; Ferrin v. Myrick, 41 N. Y. 315; Austin v. Munro, 47 N. Y. 360, 366; Parker v. Day, 155 N. Y. 383–387, 49 N. E. 1046.

In Schutz v. Morette, 146 N. Y. 137–140, 40 N. E. 780, adhering to the rule of law wherein executors or administrators are personally liable upon their contracts, Andrews, C. J., says:

"In this case the authorities establish that an executor or administrator may state an account of dealings of the testator or intestate, and that an action or an insimul computassent may be maintained against him in his representative capacity to recover a claim ascertained and adjudged on such accounting. Citing·Segar v. Atkinson, 1 H. B. L. 103; Ashby v. Ashby, 7 B. & C. Rep. 444. When the account relates to transactions between the executor or administrator and another party, upon claims not existing at the death of the decedent, although they grow out of matters connected with administration, the action lies only against the executor or administrator personally."

In the one case the judgment is de bonis testatoris, and in the other de bonis propriis. Reynolds v. Reynolds, 3 Wend. 244; Gillet v. Hutchinson, Adm'rs, 24 Wend. 184; O'Brien v. Jackson, 167 N. Y. 31, 60 N. E. 238. .

An executor or administrator can only exempt themselves from personal liability in contracting a debt for the benefit of an estate by an express agreement by the creditor to look to the estate alone for payment, and not to the executor personally. It must be an express contract by the creditor before it can have this effect, and especially where an executor enters into an obligation. for the benefit of the estate which is not contracted for the decedent the law has not in any manner changed·from his personal liability to a liability in his representative capacity, and this has been held in Foland v. Dayton, 40 Hun, 563, which was an action brought to recover the value of services stated to have been rendered by the plaintiff for the defendant, who was the administrator of the estate of his deceased son, and in that case it was held that, if he had become liable at all, it was as administrator of the estate, and the court directed the jury that if it was the intention of the plaintiff to look to Mr. Dayton, as administrator, for his compensation, then he could not recover against him individually. This was considered by the court upon a motion for a new trial, and it was held and decided to have been a misdirection as to the law, and for that reason the verdict in favor of the defendant was set aside.

In this view of. the law the court was quite clearly correct, for a mere intention on the part of the plaintiff to look to the administrator for his compensation would not prevent him from recovering a verdict against the defendant personally if the services were rendered for him, without an agreement that they should be paid for out of the estate. A point similar to this was considered in Austin v. Munroe, 47 N. Y. 360, but it was not probably intended to overrule the preceding case of Chouteau v. Suydam, 21 N. Y. 179. It was also practically followed in New v. Nicoll, 73 N. Y. 127, 29 Am. Rep. 111.

[2, 3] These cases, considered together, required that the law shall be held to be that the administrator himself will be personally liable for the value of services rendered at his instance for the benefit of the estate where there is no agreement on the part of the creditor to look or confine his claim for compensation to the estate itself, or the defender in his official capacity. Where services are rendered under such employment or agreement, then the party rendering them will not be at liberty afterwards to resort to the personal representative individually, but he will be confined to the. rights or remedies existing for the enforcement of the agreement as it has been made by him. And if by agreement he has confined himself to the estate as his debtor, or the personal representative administering it, he will not be permitted to maintain an action for the recovery of his demand against the personal representative of himself individually. To produce this result the agreement of the plaintiff may be established as other agreements are allowed to be proved in courts of justice. That may be done by the language used on the occasion when the agreement is alleged to have been made, or by circumstances disclosing the nature and effect of the

same. Whether the plaintiff can maintain the action himself, therefore, bears upon what the contract shall appear to have been under for which the services were rendered. A mere intention to look to the estate of the defendant as administrator is not sufficient to exclude his individual liability, but an agreement on the part of the plaintiff, either express or to be inferred from circumstances, to look to the estate or to the administrator as such for his compensation will prevent him maintaining his action to recover against him individually.

As the case was submitted to the jury the charge was too favorable to the defendants, and the order was right setting aside the verdict and directing another trial of the action. So, to the same effect, Martin v. Platt, 51 Hun, 429, 4 N. Y. Supp. 359. These cases illustrate the rule that the individual liability exists against an executor or administrator in his individual capacity under his contract with a creditor, unless, in plain language, in such contract, it is expressed that the creditor agrees to seek his remedy to recover the indebtedness due him from the estate and not against the parties in their representative capacity. As was said in Foland v. Dayton, supra:

"It seems to be established, therefore, that where there is no agreement on the part of the creditor to look or to confine his claim for compensation to the estate itself or to the defendant in his official capacity, the executor will be held personally responsible." 11 Am. & Eng. Ency. of Law (2d Ed.) 934.

The same principle was held in Brackett v. Ostrander, 126 App. Div. 529, 110 N. Y. Supp. 779, wherein the plaintiff, an attorney, suing executors individually, was held not entitled to recover because he had agreed that he would "make no further personal claim against said executors, for said services, making any further claim only against the said estate or said persons as executors." See, to the same effect, Bottome v. Neeley, 124 App. Div. 600, 109 N. Y. Supp. 120, holding that the referee could recover only from the estate because he had expressly agreed that his fees should be paid out of the estate on the taking up the referee's report.

So, therefore, the rule laid down in Foland v. Dayton, supra, is still the law covering actions of this description. When this case at bar was before the Appellate Term, as hereinabove stated, the said court refused to go any further than to hold that the stipulation entered into by the defendants herein meant that the referee "agreed that he would not look to the parties individually until the costs had been taxed by the surrogate." And as the amount of the referee's fees had not then been taxed by the surrogate, there was nothing for the court to do but to dismiss the complaint, and which was correctly done. But on the present trial it was shown that the fees have now been taxed by the Surrogate's Court and that the condition of the defendants' individual liability, as pointed out by the Appellate Term, has now been performed. And if the fees were taxed in the Surrogate's Court in the first instance, before the first trial of this case was had in the Municipal Court, and if the plaintiff had then succeeded in obtaining the judgment, the Appellate Term on appeal from said judgment would not necessarily be obliged to hold that the stipulation did not constitute an agreement

by the referee to look only to the estate for his fees, and the court would have never used the language:

"That the referee agreed that he would not look to the parties individually until the cost had been taxed by the surrogate, and that the contract had not yet been complied with. By so doing, the court would be obliged to entirely reject the words 'in the first instance.'"

[4] Now, coming to the question as to the liability of the estate for the referee's fees: By the stipulation it was intended that the referee should be compensated, and that in making the stipulation they were providing the means whereby that end might be accomplished, and in construing this agreement it warrants the court in finding the intention that the court should look only to a fund which, to the knowledge of the parties, does not exist; the language of the agreement should be so absolutely clear as to have no other meaning.

From the facts which were divulged upon the trial it is apparent that there was no money in the estate out of which the referee or the stenographer could be paid for services rendered. And what could be gained by dismissal of the complaint herein, leaving the plaintiff to his remedy to obtain his fees out of the estate, would be absurd in itself, as nothing could be gained therefrom. This is an unnecessarily idle ceremony, and nothing could be gained therefrom. From the exhibits offered in evidence it is shown that there are no assets in this state or within the jurisdiction of its courts. The account of the defendant as executor shows a large deficit. The referee's report in evidence showed a balance of $90.04, which was a surcharge, and did not represent any actual amount in the executor's hands. The executor was removed, as appears from the answer, and, as far as it appears on the trial hereof, his successor has not been as yet appointed. So therefore there is no one to sue and nothing to recover from said estate.

[5] It is true that the plaintiff concedes that the ancillary administrator in New Jersey has sufficient moneys in his hands. The evidence shows that a demand was made upon him to pay the plaintiff's claim, but such demand was refused. Nor is he compelled to go into a foreign tribunal, whose courts may have jurisdiction of the subject-matter involved herein, for the purpose of collecting his claim. No claim exists against the foreign administrator, and between the plaintiff and that official there is no privity of contract whatever, and if suit was brought the plaintiff could not succeed and would be nonsuited upon the last ground mentioned, to wit, no privity of contract.

The court has carefully reviewed the authorities cited by the defendant herein, but fails to find any cases cited differing from the law as stated in the authorities heretofore cited herein. The verdict as directed in favor of the plaintiff. under the authorities hereinbefore quoted was correct, and the motion for a new trial must therefore be denied.